## BRY–FERN CARE CENTER, INC., Petitioner/Cross–Respondent,

v.

## NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner.

Nos. 92–6484, 92–6561.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 8, 1993.

Decided Feb. 28, 1994.*

* This decision was originally issued as an "unpublished decision" filed on February 28, 1994. On March 22, 1994, the court designated the opinion as one recommended for full-text publication.

Brent D. Rector (argued and briefed), Miller, Johnson, Snell & Cumminskey, Grand Rapids, MI, for Bry–Fern Care Center, Inc.

Aileen A. Armstrong (briefed), Dep. Asso. Gen. Counsel, Peter Winkler, Angela Washington (argued), N.L.R.B., Appellate Court Branch, Washington, DC, Stephen M. Glasser, Acting Regional Dir., N.L.R.B., Region Seven, Detroit, MI, for N.L.R.B.

Before: JONES and SILER, Circuit Judges; and BERTELSMAN, Chief District Judge.**

SILER, Circuit Judge.

Petitioner, Bry–Fern Care Center, Inc. ("Bry–Fern"), a nursing home in Michigan, challenges an order of the National Labor Relations Board ("the Board") requiring Bry–Fern to bargain with and furnish relevant information to Local 79, Service Employees International Union, AFL–CIO–CLC ("the Union"). Bry–Fern claims that the collective-bargaining unit determined by the Board is inappropriate. The Board has filed a cross-application for enforcement of its order.

For the reasons stated below, we deny Bry–Fern's petition and grant the Board's cross-application for enforcement.

### I.

Bry–Fern employs thirty-five to forty service and maintenance employees. In July 1991, Bry–Fern purchased a four-stall commercial car wash about five miles from the nursing home and converted two of the stalls into a laundry facility, installing two commercial washers and three commercial dryers. Previously, the nursing home did not have commercial laundry facilities and always contracted with outside laundry services; Bry–Fern did, however, have two residential-sized washers and dryers, and Bry–Fern employees used these machines to do the patients' personal laundry. The home was subject to maximum daily water usage limits that precluded it from meeting all of its laundry needs on-site, so Bry–Fern obtained the off-site laundry facility to reduce on-site water consumption. In mid-September 1991, the off-site facility began handling all of the nursing home's laundry, including the patients' personal laundry, though one of the car wash stalls continued to operate as a customer-operated car wash.

The laundry is staffed by two full-time employees, Beatrice Holmes and Rheba Williams, who had worked previously at the nursing home. Holmes had worked in the on-site laundry, and Williams had worked with the housekeeping staff, in addition to occasionally substituting for Holmes. They both transferred voluntarily to the off-site laundry when it began operating.

Holmes and Williams work exclusively at the off-site laundry facility. Their duties involve only the laundry operations; they have no responsibilities relating to the coin-operated car wash. Their supervisor, Chris Laski, is Director of Plant Operations for the nursing home, and his office is at the nursing home. Holmes and Williams are on the same payroll system as the nursing home's other employees and are subject to the same personnel policies as the other employees of the nursing home. They work the same hours and receive the same wage and employment benefits as the other housekeeping employees of the home. Aside from Laski, who disburses their payroll checks, and other supervisors, who deliver the home's laundry to the off-site facility, Holmes and Williams have no working contact with the other employees. Since they began working at the laundry facility, neither Holmes nor Williams has had any need, in the course of her work, to go to the nursing home.

On November 12, 1991, the Union filed a representation petition with the Board, seeking certification as the collective bargaining representative of the nursing home's service and maintenance employees. The Union and the nursing home agreed that the bargaining unit would include the nursing home's full-time and regular part-time nursing assistants, cooks, dietary aides, and housekeeping and custodial employees. A representation hearing was held on December 9, 1991 to determine whether the two employees from

** The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

the off-site laundry should be included in the unit.

The Regional Director issued a Decision and Direction of Election on December 20, 1991, finding that the laundry was a "satellite" of the nursing home and that Holmes and Williams were appropriately included in the bargaining unit. Bry–Fern filed a request for review, which the Board denied on January 16, 1992.

On January 17, 1992, the Board conducted a secret-ballot election among the unit employees. The Union won by a vote of 15 to 13, and the Regional Director certified the Union as the unit's exclusive collective bargaining representative.

Subsequently, Bry–Fern refused the Union's requests to bargain and furnish information. The General Counsel issued a complaint alleging that the nursing home was engaging in unfair labor practices; Bry–Fern responded by contesting the validity of the Board's certification of the Union. The Board granted summary judgment for the General Counsel and ordered the nursing home to bargain with and furnish information to the Union.

## II.

■ Determining an appropriate bargaining unit is closely tied to the unique facts of any given case. *See Park Manor Care Ctr.*, 305 N.L.R.B. 872, 1991 WL 276548 at *5 (Dec. 18, 1991). Therefore, the Board is given broad discretion in making unit determinations, *NLRB v. Catherine McAuley Health Ctr.*, 885 F.2d 341, 344 (6th Cir.1989), and we will uphold a unit determination unless it is arbitrary, unreasonable, or an abuse of discretion, *Armco, Inc. v. NLRB*, 832 F.2d 357, 362 (6th Cir.1987), *cert. denied*, 486 U.S. 1042, 108 S.Ct. 2034, 100 L.Ed.2d 619 (1988). Any factual findings made by the Board in the course of a unit determination, if supported by substantial evidence, are conclusive. *Id.* at 362–63. A Board decision, "if not final, is rarely to be disturbed." *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947). *See*

*also NLRB v. First Union Management, Inc.*, 777 F.2d 330, 333 (6th Cir.1985); *NLRB v. American Seaway Foods, Inc.*, 702 F.2d 630, 632 (6th Cir.1983). In making a unit determination, the Board must select an "appropriate" bargaining unit. 29 U.S.C. § 159(b). Often there will be a range of appropriate units, and the Board is not required to select the *most* appropriate unit. *American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 610, 111 S.Ct. 1539, 1542, 113 L.Ed.2d 675 (1991); *First Union Management*, 777 F.2d at 333; *NLRB v. Fuelgas Co.*, 674 F.2d 529, 530 (6th Cir.1982).

■ In evaluating the appropriateness of a unit determination, we follow the "community of interests" test: two groups of employees can properly be included in the same bargaining unit if they share a " 'community of interests sufficient to justify their mutual inclusion in a single bargaining unit.' " *Armco*, 832 F.2d at 362 (quoting *Pacific Southwest Airlines v. NLRB*, 587 F.2d 1032, 1038 (9th Cir.1978)). The community of interests test considers several factors:

(1) similarity in skills, interests, duties, and working conditions;

(2) functional integration of the plant, including interchange and contact among the employees;

(3) the employer's organizational and supervisory structure;

(4) the bargaining history; and,

(5) the extent of union organization among the employees.

*Id.* at 362.[1]

## III.

■ Considering the factors set out above, a sufficient community of interests exists to justify inclusion of the laundry employees and the nursing home employees in a single bargaining unit, and the facts clearly support the conclusion that the laundry is a satellite of the nursing home. First, there is a significant similarity in the working conditions at the home and the laundry. The laundry employees share the same wages and benefits as the service and maintenance employ-

---

1. Because there is no pre-existing bargaining unit or bargaining history, only the first three prongs of the community of interests test are relevant to our inquiry.

ees at the nursing home. The laundry and nursing home employees also work the same hours (8:30 a.m. to 5:00 p.m.) and are governed by the same set of personnel policies and guidelines. *See Catherine McAuley Health Ctr.*, 885 F.2d at 345 ("The primary concern or 'touchstone' of a bargaining unit determination is the question of whether all the members have a mutual interest in wages, hours, and other terms and conditions of employment.").

Second, the organization and supervisory structure of the nursing home and the laundry facility are completely centralized. The laundry employees are supervised by the nursing home's Director of Plant Operations, who also supervises, either directly or indirectly, all of the service and maintenance employees working at the nursing home. All personnel issues and policies are addressed through the nursing home's central administration. *See id.* ("[C]entralized control of day-to-day labor relations in areas of importance to employees may indicate an integrated operation where a broader unit may be appropriate.").

■ Third, though essentially no employee contact or interchange occurs between the laundry and the nursing home, the two facilities are, nevertheless, functionally integrated. Functional integration implicates not only employee contacts but also the interrelation of the actual operations of the facilities. *See Presbyterian Medical Ctr.*, 218 N.L.R.B. 1266, 1975 WL 5686 at *6 (June 30, 1975) (upholding a unit determination combining into one bargaining unit nursing staff from two hospitals, about twelve miles apart, where the employer operated both hospitals and planned to coordinate and integrate their operations). While Bry–Fern's president, Emmett McDonough, expressed his intention to expand the laundry facility to eventually handle other customers, the facility, at present, serves only the nursing home. The laundry facility is an integral element of the nursing home's operations and support. Once the laundry became operational, the nursing home stopped using its outside laundry contractor and sent all of the home's laundry to the off-site facility.

## IV.

■ When the Board shapes a bargaining unit to include employees from more than one site or facility, in addition to the community of interests inquiry, the geographic separation among the facilities will often be considered. In *Catherine McAuley Health Ctr.*, we found geographical proximity relevant in that it can affect the community of interests among employees of separate facilities. 885 F.2d at 347. Geographical distance can also affect the ability of employees in a multi-location unit to participate in unit activities. *NLRB v. Carson Cable TV*, 795 F.2d 879, 886 (9th Cir.1986).

Bry–Fern emphasizes the five-mile distance between the nursing home and the laundry facility as weighing in favor of finding that each facility constitutes a separate unit. Bry–Fern refers to *Health and Medical Care Found.*, 265 N.L.R.B. 1313, 1314, 1982 WL 24115 (1982), where the Board mentioned, among other factors, a similar distance in finding that each of the nine nursing homes in the employer's chain was a separate bargaining unit. However, geographic separation is not dispositive, and the courts tend to be imprecise and inconsistent in evaluating geographic proximity. In *Carson Cable TV*, the Ninth Circuit upheld a multi-facility unit that included units separated by as much as forty miles. 795 F.2d at 886. *See also Fuelgas*, 674 F.2d at 531 (upholding unit determination including employees from separate facilities that were fourteen miles apart).

■ Finally, Bry–Fern acknowledges that the main purpose in establishing the off-site laundry facility was the fact that water-usage limits precluded the nursing home from establishing an on-site laundry facility capable of meeting the home's needs. This suggests that, but for a factor beyond the control of the nursing home, the water usage limits, the home's laundry facility would be on-site. This point further supports the finding that the laundry is effectively an extension, a satellite, of the nursing home and indicates that little weight need be given to the geographical separation between the nursing home and the laundry facility.

## V.

█ Contrary to Bry–Fern's contention, the single-facility presumption has no application in the present case. The single-facility presumption "treats single-site [bargaining] units as presumptively appropriate."[2] *First Union Management,* 777 F.2d at 333. However, this doctrine "only tends to establish that a single-site unit, when requested, constitutes an appropriate unit." *Id.* at 334. Therefore, the Board acted properly in not applying the presumption.

> Where ... the union requests and the Board designates a multi-location unit as appropriate, the [single-site unit] presumption simply has no application. The presumption does not preclude designation of a larger unit, but only works to assure that a Board determination that a smaller unit is appropriate will almost never be subject to challenge.

*Carson Cable TV,* 795 F.2d at 887.

## VI.

█ Bry–Fern contends that the Board's determination of a collective-bargaining unit including both nursing home staff and staff from the off-site laundry facility inappropriately mixes health care and non-health care employees and is, therefore, contrary to the policies behind the health care provisions of the National Labor Relations Act ("N.L.R.A."), 29 U.S.C. § 158(g).

Section 8(g) of the N.L.R.A., 29 U.S.C. § 158(g), requires unions to give at least ten days prior notification to an employer health care institution "before engaging in any strike, picketing, or other concerted refusal to work at any health care institution"; the statute defines a "health care institution" as including nursing homes, 29 U.S.C. § 152(14). Bry–Fern argues that, under this

provision, the laundry facility employees are not health care employees and could, therefore, initiate a strike against the nursing home without giving the required ten days notice. Bry–Fern further argues that the laundry employees could, as a result, be used as "pawns in the affairs of the nursing home."

Bry–Fern's argument assumes that the laundry employees are not health care employees; however, the finding that the laundry is a satellite of the nursing home indicates that Holmes and Williams are, in fact, health care employees. Additionally, Bry–Fern misunderstands § 8(g), which applies only to concerted union activity "directed against the health care institution." *Painter's Local No. 452,* 246 N.L.R.B. 970, 1979 WL 9556 at *5 (Dec. 14, 1979). Therefore, the linchpin of § 8(g) is not the status of the employees; rather, it is the status of the institution at which the activity is directed. *Id.; see also NLRB v. International Brotherhood of Electrical Workers, Local 388,* 548 F.2d 704 (7th Cir.), *cert. denied,* 434 U.S. 837, 98 S.Ct. 127, 54 L.Ed.2d 99 (1977); *Laborers' International Union of North America Local 1057 v. NLRB,* 567 F.2d 1006 (D.C.Cir. 1977).[3] As a result, any work stoppage by the off-site laundry employees would be subject to the notification requirements of § 8(g).

## VII.

As the Board's findings are supported by substantial evidence and are not arbitrary, unreasonable, or an abuse of discretion, Bry–Fern's petition is **DISMISSED**; and the Board's cross-application for enforcement of its order requiring Bry–Fern to furnish in-

**2.** One of the factors underlying this presumption is the belief that employers often request larger, multi-site units.

**3.** Bry–Fern also refers to the Board's Decision in *Duke University,* 306 N.L.R.B. 555, 1992 WL 46420 (Feb. 28, 1992), which held that campus bus drivers servicing an entire campus, including the university's medical center, were a separate and appropriate bargaining unit distinct from the medical center's employees. However, in *Duke*

*University,* the Board explicitly found that "policy considerations such as a concern for the potential disruption of health care services in the event of a work stoppage" were not sufficiently implicated to warrant including the bus drivers as health care employees. 1992 WL 46420 at *3. Additionally, the bus drivers in *Duke University* were not hired by the medical center, nor were their supervisors affiliated with the medical center. *Id.* at *1.

formation to and bargain with the Union is **GRANTED.**