89 F.3d 832
 153 L.R.R.M. (BNA) 2096
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BUY-RITE LUMBER COMPANY, and Buy-Rite Lumber Company of
Medina, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 95-5217, 95-5396.
 United States Court of Appeals, Sixth Circuit.
 June 13, 1996.
 
 1
 Before: MILBURN and BOGGS, Circuit Judges; and BORMAN, District Judge.[1]
 
 BORMAN, District Judge:
 
 2
 Petitioners Buy-Rite Lumber Company and Buy-Rite Lumber Company of Medina ("Buy-Rite"[2]) petition for review of the National Labor Relations Board's ("NLRB") Decision and Order:[3]
 
 
 3
 (1) certifying Teamster Union Local 348 as the collective bargaining representative for all full-time truck drivers at the Employer's three Buy-Rite facilities located at Copley, Streetsboro and Medina, Ohio.
 
 
 4
 (2) finding that the unlawful refusal to bargain by Buy-Rite constitutes an unfair labor practice.
 
 
 5
 (3) ordering that Buy-Rite, on request, bargain with the Union as the exclusive representative of the Buy-Rite full-time truck drivers.
 
 
 6
 Petitioners claim before this Court that the collective-bargaining unit determined by the Board, truck drivers at the three stores, is inappropriate. The Board has filed a cross-application for enforcement of its Order.
 
 
 7
 For the reasons stated below, we deny Buy-Rite's Petition, and grant the Board's cross-application for enforcement of its Order.
 
 I. PROCEDURAL BACKGROUND
 
 8
 On June 29, 1994, the Union filed a representation petition with the Regional Office of the NLRB requesting certification as the collective bargaining representative for truck drivers at Petitioners' three stores. A representation hearing was held before the NLRB Regional Director to determine whether the three facilities could be regarded as a single employer, and whether a single unit of drivers employed at all three facilities was an appropriate bargaining unit. The Regional Director issued a decision on August 12, 1994, finding the following unit to be appropriate for bargaining:
 
 
 9
 All full time truck drivers at [Buy-Rite's] facilities located at Copley, Medina, and Streetsboro, Ohio, excluding all other employees, all office clerical employees, professional employees, and supervisors as defined in the Act.
 
 
 10
 NLRB Decision and Direction of Election, Joint Appendix 8. Buy-Rite filed a Request for Review and Stay of Election with the NLRB, which was rejected. At a September 16, 1994 secret-ballot election held for the truck drivers, the Union won (5-3). The NLRB subsequently certified the Union as the exclusive bargaining representative for the truck drivers at the three Buy-Rite facilities.
 
 
 11
 On October 5, 1994, the Union requested that Buy-Rite commence collective bargaining. When Buy-Rite refused, the Union filed an unfair labor practice charge. The NLRB issued a Complaint and Notice of Hearing on this charge. Buy-Rite admitted refusing to bargain, but maintained that certification of the Union was contrary to law. On January 6, 1995, the NLRB's General Counsel filed a Motion for Summary Judgment with the NLRB. The NLRB issued a Notice to Show Cause why the motion should not be granted. Buy-Rite did not respond to this notice[4]. On January 31, 1995, the NLRB issued a decision granting summary judgment and ordering Buy-Rite to bargain with the Union.
 
 
 12
 On February 13, 1995, Buy-Rite filed a Petition for Review of the NLRB decision with this Court. On March 16, 1995, the NLRB filed a Cross-Application for Enforcement of its Order.
 
 II. FACTUAL BACKGROUND
 
 13
 All three stores do business under the "Buy-Rite" name. The Copley and Streetsboro stores are wholly owned subsidiaries of the Brown-Graves Company,[5] an Ohio corporation owned by the Graves family. Harold Graves, Jr. is the president of the Copley and Streetsboro stores. The Medina store is a joint-venture between Empire Wholesale Lumber Co. ("Empire"), an Ohio corporation and Gulf Stream Lumber Co. ("Gulf Stream"), a Florida corporation. Empire is owned and controlled by Harvey Graves, Harold Graves' brother, and his immediate family. Gulf Stream is owned by the children and grandchildren of Harold Graves. Harvey Graves is the president of the Medina store.
 
 
 14
 S. Keith Graves ("Keith Graves"), son of Harold Graves, serves as the (1) chief operating officer ("C.O.O.") of all three facilities, (2) president and chief executive officer of Gulf Stream, and (3) vice president of Brown-Graves.
 
 
 15
 The three Buy-Rite stores sell home improvement products and building supplies, and are located within 40 miles of each other. Each facility has a retail store operation in the front and a lumber yard in the rear. The facilities use the same employee work classifications. There are retail sales employees in the front, yard employees in the back, and drivers. The yard employees at each facility include load builders, customer service employees and stock employees. Keith Graves Testimony, Joint Appendix 336.
 
 
 16
 The Copley facility, the only one with a railroad siding, serves as the distribution center for the two other facilities:
 
 
 17
 [A] large majority of our materials come in by rail car into the Copley yard, and these rail cars are divided up. And the materials is stored or staged for one of our other locations. (emphasis added)
 
 
 18
 Keith Graves Testimony, Joint Appendix 335-336.
 
 
 19
 The Copley facility also has a separate administrative building that houses Buy-Rite's corporate headquarters and administrative offices, including personnel and accounts payable. Purchasing and pricing for all three stores is done through the Copley office. The administrative office at Copley also sets the wages. Keith Graves Testimony, Joint Appendix 386-387.
 
 
 20
 The Brown-Graves Company performs various services for the three Buy-Rite facilities, including accounting and payroll. The Brown-Graves Company also owns some of the trucks used by the three facilities. There is a single health benefits package for employees of all three facilities.
 
 
 21
 Pricing for all three facilities is done by Keith Graves and Mike Smead, General Manager for all three facilities. Gary Price is the Purchasing Manager for all three facilities. Keith Graves Testimony, Joint Appendix 393. Mike Smead maintains an office at the Copley location.
 
 
 22
 None of the three Buy-Rite facilities has a store manager. Each facility has a yard or shipping foreman who supervises the yard operations, and an associate manager, who supervises the retail store. Both the yard foremen and the associate managers report to General Manager Mike Smead with regard to hiring, firing and discipline of employees.
 
 
 23
 All employees at the three facilities are required to sign a "Buy-Rite Lumber Company Employment, Non-Compete, and Confidentiality Agreement." Keith Graves Testimony, Joint Appendix 376. This agreement permits the exchange of confidential information among the three Buy-Rite facilities, but prohibits sharing such information with other companies.
 
 
 24
 Employees at all three facilities are subject to the same wage scales, benefits, insurance, and vacation schedules, and are subject to the same policy and procedures manual. Keith Graves Testimony, Joint Appendix 426. That manual is titled "Buy-Rite Lumber/Home Centers Employee Benefits & Responsibilities Company Policies & Procedures." Joint Appendix 109.
 
 
 25
 Truck drivers employed at the three facilities are not only required to follow the aforementioned Buy-Rite policy and procedures manual, but also an additional set of detailed rules, provided in a supplemental manual specifically designed for truck drivers, titled "Buy-Rite Lumber Company Truck Drivers Manual". Joint Appendix 246. Buy-Rite Lumber Company also has a written set of "Policy and Procedures for Hiring and Training of Newly Hired Drivers". Joint Appendix 262. Drivers are responsible for their trucks, and are also subject to mandatory drug testing. Drivers generally spend approximately eighty percent of their time operating their trucks, although during the off-peak season, driving time is considerably less. Jimmie Boyd Testimony, Joint Appendix 433. Although each driver is designated as employed at one facility, drivers transport inventory between the three facilities when adjusting inventory levels. Keith Graves Testimony, Joint Appendix 422. While at that other store, the driver reports to that store's yard supervisor. Id. 429.
 
 
 26
 Yard employees assemble the loads to be delivered to construction sites by the drivers. When not driving, drivers assemble loose items of the load and work in the yard. Drivers work one shift, usually until 4:00 p.m. or whenever their loads are finished. Mike Smead Testimony, Joint Appendix 505-506. Yard employees work two shifts assembling loads; the first shift comes in before the drivers, and the second shift usually leaves after, at 6:30 p.m. Id. 505-506.
 
 III. Standard of Review
 
 27
 The NLRB is given broad discretion in making unit determinations, NLRB v. McAuley Health Center, 885 F.2d 341, 344 (6th Cir.1989). Sixth Circuit precedent upholds a unit determination unless it is arbitrary, unreasonable or an abuse of discretion. Bry-Fern Care Center, Inc. v. NLRB, 21 F.3d 706, 709 (6th Cir.1994); Automobile Club of Michigan v. NLRB, 631 F.2d 82, 84 (6th Cir.1980) (finding that the Board's determination is entitled to affirmance unless it constitutes an abuse of discretion). Any factual findings by the NLRB must be upheld if supported by substantial evidence. Bry-Fern Care Center, 21 F.3d at 709. In making a unit determination, the Board must select an "appropriate" bargaining unit. 29 U.S.C. § 159(b). Often there will be a range of appropriate units, and the Board is not required to select the most appropriate unit. Bry-Fern Care Center, 21 F.3d at 709 (citing American Hosp. Ass'n v. NLRB, 499 U.S. 606, 610 (1991)).
 
 
 28
 A. Buy-Rite's Challenges to the NLRB's Unit Determination
 
 
 29
 A bargaining unit must be appropriate in both scope and composition. NLRB v. McAuley Health Center, 885 F.2d at 346. Buy Rite's challenges encompass both unit scope and composition, arguing that the NLRB erred in (1) concluding that its three facilities constitute a single employer (2) finding a multi-facility unit appropriate and (3) finding a unit composed of truck drivers only. Each challenge is addressed separately below.
 
 
 30
 i. The Copley, Streetsboro, and Medina Buy-Rite Stores as a
 
 Single Employer
 
 31
 The NLRB and the courts consider four factors in determining whether two or more related entities can be regarded as a single employer: (1) interrelation of operations (2) common management (3) centralized control of labor relations and (4) common ownership. Distillery, Wine & Allied Workers International Union v. National Distillers & Chemical Corp., 894 F.2d 850, 852 (6th Cir.), cert. denied, 498 U.S. 820 (1990). In the instant case, all four factors support the finding of a single employer entity.
 
 
 32
 "[T]he analysis of whether two companies should be considered allied depends on the practical, day-to-day operations of the companies, and the issue will be decided on a case-by-case evaluation of the factual relationship between the two entities." Boich Mining Co. v. NLRB, 955 F.2d 431, 434 (6th Cir.1992). In Boich, this Court found two companies owned by a single parent company to be separate employers where each entity had "a separate management, under a different company president and vice president." Id. 435. Further, in Boich, the court stated,
 
 
 33
 Each company's operations are completely separate: Aloe and Boich maintain separate offices, payroll systems, bank accounts, financial and accounting operations. There is no interchange of either employees or supervisors.
 
 
 34
 Id. 435. This is not the situation in the instant case.
 
 
 35
 a. interrelation of operations
 
 
 36
 The NLRB's determination that there is an interrelation of the similar Buy-Rite store operations is supported by substantial evidence. The Copley facility functions as a distribution center for all three facilities, and also houses the administrative offices for all three facilities. Purchasing and pricing of items is consolidated and performed at the Copley offices. Records of inventory balancing are maintained at the Copley administrative offices. The accounting services and payroll for all three facilities are performed by the Brown-Graves Co.
 
 
 37
 Truck drivers routinely transport inventory among the three facilities:
 
 
 38
 The other two yards do not have railroad sidings, okay? So, when we bring the materials in, the other two yards could not even stand on their own two legs by themselves without the buying power of Copley. So the material is brought into the Copley yard, which is divided up. So, every once in a while the inventories will get out of balance and that's why the trucks will transfer them between the companies ... it happens probably on a weekly basis[.]
 
 
 39
 Keith Graves Testimony, Joint Appendix 422-423. While each facility has its own fleet of trucks, if a truck from one facility malfunctions, it may be replaced by a truck from another facility.
 
 
 40
 The trucks used by all three stores carry logos that read, "Buy-Rite Lumber," followed by the names of all three facilities. Keith Graves Testimony, Joint Appendix 418. Buy-Rite Company invoices also contain the names of all three facilities.
 
 
 41
 Buy-Rite argues that the three facilities are independent competitors who deal with each other at arms-length. The facts reveal the opposite. Buy-Rite's argument is further undercut by the fact that employees of all three stores are required to sign a "non-compete" and confidentiality agreement, which as discussed above, permits the exchange of confidential information among the three facilities.
 
 
 42
 b. common management
 
 
 43
 The NLRB's finding that the three facilities are under common management is supported by substantial evidence. The boards of directors and officers of all three facilities are identical. Keith Graves Testimony, Joint Appendix 377-378. Keith Graves is the chief operating officer of all three facilities. Keith Graves testified: "I guess the buck stops here. I have the final say of anything at Buy-Rite." Keith Graves Testimony, Joint Appendix 375. He also testified that Mike Smead is the general manager of Buy-Rite Lumber Company--all three facilities. Id. 385. None of the three facilities has an individual store manager. The prices are set by Keith Graves and Mike Smead. Keith Graves Testimony, Joint Appendix 393. Both Keith Graves and Mike Smead possess the authority to hire and fire the yard foremen for all three facilities. Mike Smead maintains an office in the Copley administrative building. Mike Smead is the supervisor of the foremen for each facility and speaks to them on a weekly basis. None of the three facilities has an individual store manager:
 
 
 44
 Probably eight years ago we had actual store managers that tried to run the individual store autonomously, and that just created a major nightmare--it seemed like everybody was trying to get one leg up on the other, so we do have the policies well established ... there is no longer one store manager that runs one store anymore.
 
 
 45
 Keith Graves Testimony, Joint Appendix 427.
 
 
 46
 c. centralized control of labor relations
 
 
 47
 In Boich Mining, two companies were found to be separate entities, even though they were both wholly owned subsidiaries of the same holding company because management and control over labor relations were separate. Boich Mining, 955 F.2d at 435. The record in the instant case, however, indicates that control of labor relations because of common management, and a centralization of functions at the Copley facility administrative offices, which maintain the original employee personnel files for employees of all three facilities. Mike Smead Testimony, Joint Appendix 484. Mike Smead, as the general manager, supervises labor relations at all three facilities. While the yard foremen at each facility have authority to hire, fire and discipline, they report to Smead, who is actively involved in such decisions. The Buy-Rite employee policy and procedures manual applies to all three facilities. Keith Graves Testimony, Joint Appendix 384. That manual states that if a complaint cannot be resolved with the direct supervisor, a complaint should be made to the company manager. Smead testified that he is the 'company manager' referred to in that document. Mike Smead Testimony, Joint Appendix 483.
 
 
 48
 d. common ownership
 
 
 49
 The evidence submitted in this case supports the finding of common ownership by the Graves family. The Copley and Streetsboro stores are wholly owned subsidiaries of the Brown-Graves Co., which is owned by the Harold Graves family. The Medina store is a joint venture between two Graves family businesses--one is owned by the family of Harvey Graves; the other is owned by the family of Harold Graves. Keith Graves is the chief operating officer of all three facilities. The annual meetings for all the family-owned enterprises are usually held on the same date and at the same place. Keith Graves Testimony, Joint Appendix 379-380.
 
 
 50
 ii. Finding of Multi-Facility Unit
 
 
 51
 The Regional Director found the multi-facility unit appropriate in view of the centralized control over labor relations and daily operations, similar skills and employee functions, similar general working conditions of employees, employee interchange and contact and close geographic proximity to each other. In determining whether a multi-location bargaining unit is proper, the NLRB has adhered to a community of interests test: two groups must share a community of interests "in wages, hours, and other conditions of employment" sufficient to justify their mutual inclusion in a single bargaining unit. NLRB v. McAuley Health Center, 885 F.2d at 345. Armco, Inc. v. NLRB, 832 F.2d 357, 362 (6th Cir.1987), cert. denied, 486 U.S. 1042 (1988). The test consists of several factors: (1) similarity in skills, interests, duties, and working conditions; (2) functional integration of the plant, including interchange and contact among the employees; (3) the employer's organizational and supervisory structure; (4) the bargaining history; and (5) the extent of union organization among employees[6]. Id. 362. Further, this Court noted in Armco, Inc. v. NLRB, 832 F.2d at 363:
 
 
 52
 Because of its wide experience, the Board should be given some deference in its selection of an appropriate bargaining unit through the application of the "community of interests" test.
 
 
 53
 a. similarity in skills, interests, duties, and working conditions
 
 
 54
 The three Buy-Rite facilities use the same classifications of employees, who are all subject to the same policies regarding wages, overtime, vacations and benefits. Each facility has the following yard employee classifications: load builders, customer service employees, stock employees and truck drivers. The employees at each facility perform essentially the same job, except that the stock employees at the Streetsboro facility do not work in the yard. One courier is responsible for driving a van between the three stores to pick up and deliver mail.
 
 
 55
 Employees at all three facilities are subject to the same "Buy-Rite Lumber/Home Centers" policy and procedure manual, which contains the names and photographs of all three facilities. Joint Appendix 110. The truck drivers at all three facilities are subject to the same supplemental truck driver manual. Joint Appendix 246. In addition, employees at all three facilities are required to sign the "Buy-Rite Lumber Company Employment, Non-Compete, and Confidentiality Agreement."
 
 
 56
 b. functional integration of the plant, including
 
 
 57
 interchange and contact among the employees
 
 
 58
 There is significant integration with regard to the three facilities. The Copley facility serves as the distribution center as well as the corporate and administrative headquarters for the three facilities. Mike Smead Testimony, Joint Appendix 479. Truck drivers routinely travel to other facilities to balance the inventory. Keith Graves Testimony, Joint Appendix 422. During the bi-annual inventory process, store and yard employees travel to each facility to assist in conducting inventory. Id. 403-404. With respect to the transferring of drivers, Keith Graves testified as follows,
 
 
 59
 What it usually boils down to is that one of the yards might be heavy for loads and the other yard might be light one day, so we may go send a driver out there to help for a couple or three loads, which is a couple or three hours and he's out of there.
 
 
 60
 Keith Graves Testimony, Joint Appendix 429. When drivers are at other facilities, they take orders from the yard foreman at that location. Id. In addition, trucks are periodically reassigned to different facilities if the need arises. Id. 419.
 
 
 61
 Integration of the facilities is also apparent from the way in which Buy-Rite holds itself out to the public. The trucks, id. 418, and invoices used by all three Buy-Rite facilities contain the names of all three facilities. Joint Appendix 307.
 
 
 62
 c. the employer's organizational and supervisory structure
 
 
 63
 The three Buy-Rite facilities maintain a centralized structure. Yard foremen for each facility report to General Manager, Mike Smead, who is the final word with regard to hiring, firing and discipline. Further, all payroll, accounting and general administrative functions are performed at the Copley facility administrative offices. The purchasing and pricing for each facility is also performed at the Copley facility.
 
 
 64
 d. geographic proximity
 
 
 65
 When the Board shapes a bargaining unit to include employees from more than one site or facility, in addition to the community of interests inquiry, the geographic separation among the facilities will often be considered. Bry-Fern Care Center, Inc. v. NLRB, 21 F.3d at 710 (noting that the Ninth Circuit upheld a multi-facility unit that included units separated by as much as forty miles). The geographic proximity of the facilities in the instant case weighs in favor of finding a multi-unit facility. The three facilities are less than 40 miles away from each other. It is thirty-eight miles from the Medina to the Streetsboro facility, thirty-three miles from the Streetsboro to the Copley facility, and only seventeen miles from the Copley to the Medina facility. Keith Graves Testimony, Joint Appendix 328.
 
 
 66
 iii. Unit Composed Solely of Truck Drivers
 
 
 67
 The community of interests test is also applied to determine whether employee groups should be considered in a single bargaining unit. Armco, Inc. v. NLRB, 832 F.2d 357, 362 (6th Cir.1987) (groups must share a community of interests in wages, hours, and other conditions of employment sufficient to justify their mutual inclusion in a single bargaining unit).
 
 
 68
 a. similarity in skills, interests, duties and working conditions
 
 
 69
 The stated primary responsibility of the truck drivers is to drive company trucks loaded with building materials to contractors, other customers, or other facilities. Keith Graves, when asked what was the primary responsibility of a truck driver, stated, "It would be driving a truck." Keith Graves Testimony, Joint Appendix 329. The drivers have some overlapping secondary duties that interface with the yard employees during the non-peak building season. However, the drivers primary responsibility is driving a truck. In addition, Buy-Rite has established different hiring requirements and skill levels applicable solely to truck drivers. They are required to possess a commercial driver's license and must pass a road test before they are hired. They have different work hours than the yard employees. They are subject to additional policies and procedures, as evidenced in the supplemental truck drivers' manual, and must submit to regular drug testing. It was reasonable for the NLRB to find that the drivers are functionally distinct from the yard employees.
 
 
 70
 b. interchange and contact among employees
 
 
 71
 While other employees work with the truck drivers, e.g., yard employees in preparing the loads and loading the trucks, the drivers spend the majority of their time driving. Mike Smead Testimony, Joint Appendix 498.
 
 
 72
 c. organizational and supervisory structure
 
 
 73
 Generally, the foreman at each Buy-Rite facility oversees the daily activities of the truck drivers and the yard employees. While at a Buy-Rite facility other than their "home" facility, drivers are supervised by the foreman at that "away" facility. Keith Graves Testimony, Joint Appendix 429. Since yard employees do not travel to other facilities, the NLRB found that the drivers shared different supervision than the yard employees. It was not an abuse of discretion to find that the drivers were under a separate supervisory structure. Even if the drivers and the yard employees are found to be under the same supervisory structure, the other two factors considered in the community of interests test still weigh in favor of a drivers-only unit.
 
 
 74
 Buy-Rite contends that the NLRB's Decision was contrary to established Board precedent in which the Board found driver-only units inappropriate. However, in Atchison Lumber and Logging Co., 215 N.L.R.B. 572, 573 (1974), one such case, the Board noted that "[i]n appropriate cases, the Board has found that truck drivers may constitute separate units where the drivers are a functionally distinct and homogeneous group whose duties and interests are different from other employees." In the instant case, the Board found that the truck drivers constituted such a homogeneous group. This is supported by substantial evidence. While the Board could have concluded that a unit consisting of drivers and yard employees was appropriate, the fact that it determined that a different unit was appropriate is neither arbitrary nor an abuse of discretion.
 
 IV. Conclusion
 
 75
 The decision of the NLRB to certify the Union as the bargaining representative for truck drivers employed at the three Buy-Rite stores is supported by the evidence and cannot be said to be arbitrary, unreasonable or an abuse of discretion.
 
 
 76
 The National Labor Relations Act states in 29 U.S.C. § 160(a):
 
 
 77
 The Board is empowered ... to prevent any person from engaging in any unfair labor practice ... affecting commerce.
 
 
 78
 Section 10(c) "empowers the Board, when it finds that an unfair labor practice has been committed, to issue an order requiring the violator to 'cease and desist' from such unfair labor practice, ... and to take such affirmative action as will effectuate the policies of the NLRA. 29 U.S.C. § 160(c). The Court has repeatedly interpreted this statutory command as vesting in the Board the primary responsibility and broad discretion to devise remedies that effectuate the policies of the Act, subject only to limited judicial review." Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 898-899 (1984). This opinion was cited with approval in Holly Farms v. NLRB, --- U.S. ----, 64 U.S.L.W. 4269, 4274, (April 23, 1996.) The Court, in Holly Farms, also noted:
 
 
 79
 "[R]egardless of how we might have resolved the question as an initial matter, "Bayside [Enterprises v. NLRB, 429 U.S. 298] at 304, the Board's decision here reflects a reasonable interpretation of the law and, therefore meets our approbation."
 
 
 80
 Id. 4274.
 
 
 81
 The NLRB Decision and Order in the instant case was proper.
 
 
 82
 Accordingly, Buy-Rite's petition is therefore DENIED, and the NLRB's cross-application for enforcement of its order that Buy-Rite bargain with the Union is GRANTED.
 
 
 
 [1]
 The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 In Petitioners' briefs, "Buy-Rite" is used to refer to both entities. The Court will also use "Buy-Rite" to refer to both companies
 
 
 [3]
 Buy-Rite Lumber Company, et al. and Teamster Local Union No. 348, Case 8-CA-26887, Decision and Order, January 31, 1995. Joint Appendix 5-6
 
 
 [4]
 Buy-Rite did not provide an explanation as to why it did not respond to the Notice
 
 
 [5]
 The Brown-Graves Board of Directors includes the following members of the Graves family: Harold, Harvey, Keith and John. It also includes Pat Campbell. The same individuals also comprise the Board of Directors for Buy-Rite Streetsboro, and Buy-Rite Medina. The officers for these two stores include the aforementioned individuals plus Don Gianelli who serves as Treasurer. Keith Graves Testimony, Joint Appendix 377-378
 
 
 [6]
 Where there is no pre-existing bargaining unit or history, only the first three factors of the community of interests test have been applied. See Bry-Fern Care Center, 21 F.3d at 709