**MITCHELLACE, INC., Petitioner/Cross–Respondent (94–6540/6652), Respondent (95–5219),**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner (94–6540/6652), Petitioner (95–5219).**

Nos. 94–6540, 94–6652 and 95–5219.

United States Court of Appeals, Sixth Circuit.

Argued March 21, 1996.

Decided July 25, 1996.

Fred G. Pressley, Jr. (argued and briefed), Charles H. Cooper, Jr. (briefed), Nancy E. Falk, Porter, Wright, Morris & Arthur, Columbus, OH, for Mitchellace, Inc.

Aileen A. Armstrong, Deputy Associate Gen. Counsel, Linda Dreeben (briefed), Lisa Richardson Shearin (briefed), National Labor Relations Board, Appellate Court Branch, Washington, DC, Corinna L. Metcalf (argued), National Labor Relations Board, Washington, DC, for National Labor Relations Board in Nos. 94–6540 and 94–6652.

Aileen A. Armstrong, Deputy Associate Gen. Counsel, John Burgoyne (briefed), National Labor Relations Board, Appellate Court Branch, Washington, DC, for National Labor Relations Board in No. 95–5219.

Before: MARTIN and MOORE, Circuit Judges, and JOINER, District Judge.*

JOINER, District Judge.

These two cases arise out of the efforts of the Amalgamated Clothing and Textile Workers Union to become the certified bargaining representative of the employees of Mitchellace, Inc. Following a heated organizational campaign and a representation election, the National Labor Relations Board certified the union as the bargaining representative.

In case Nos. 94–6540/6652, Mitchellace petitions for review of the Board's order requiring it to bargain with the union, contending that the outcome of the election was tainted by union fliers distributed shortly before the election; and that the Board erroneously excluded two employees from the bargaining unit, and consequently disregarded their votes. We deny Mitchellace's petition for review and grant the Board's cross-application for enforcement in case Nos. 94–6540/6652.

Case No. 95–5219 arises out of discriminatory action taken by Mitchellace against certain employees during the union's organizational campaign. An administrative law judge (ALJ) found that Mitchellace had committed an unfair labor practice, and recom-

mended entry of an appropriate remedial order. Mitchellace agreed that it would voluntarily comply with the ALJ's recommendation, except with respect to reinstating two discharged employees. The two affected employees waived reinstatement, and the Board's local compliance supervisor then agreed with Mitchellace's proposal. Unaware of the parties' agreement, the Board entered an order adopting in toto the ALJ's decision. The Board now seeks full enforcement of its order without modification to reflect the parties' compliance agreement. We grant limited enforcement of the Board's order in case No. 95–5219.

## I.

### Case Nos. 94–6540/6652: Election Challenge

Mitchellace manufactures shoe products. On July 2, 1993, the union filed a representation petition with the NLRB, seeking certification of a bargaining unit of production and maintenance employees, including temporary workers supplied by Kelly Services. Following a hearing, the regional director excluded the Kelly Services workers and certified a bargaining unit of all production and maintenance employees. Mitchellace's office and professional employees were excluded from the unit.

The election was held on September 23. There were 227 eligible voters, and 222 cast ballots. The ballots of 211 employees were opened and counted, resulting in a tally of 111 votes in favor of the union and 100 against. The union challenged the remaining eleven ballots, contending that the employees did not belong in the bargaining unit. If these ballots were opened and if the votes went against the union, the election would have been tied. The hearing officer held against the union on all eleven ballot challenges, and recommended that those ballots be opened and counted. The union filed exceptions as to five of the eleven ballot challenges. The Board sustained the union's

*. The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michi-

gan, sitting by designation.

exceptions as to two employees, Holly Boggs and Stacey Clark, and excluded them from the bargaining unit. The Board adopted the hearing officer's recommendation as to the six challenges abandoned by the union, and did not consider the remaining three exceptions because they could not have had an effect on the election. The Board thus certified the union as the duly elected bargaining representative. Upon Mitchellace's refusal to bargain with the union, the Board found that Mitchellace had committed an unfair labor practice in violation of 29 U.S.C. § 158(a)(1) and (5), and ordered Mitchellace to bargain with the union.

In seeking review of the Board's order, Mitchellace challenges the outcome of the election on two grounds. First, it contends that fliers distributed by the union immediately prior to the election were false and misleading and tainted the outcome of the election. Second, Mitchellace contends that the Board incorrectly found employees Boggs and Clark to be office clericals rather than plant clericals, and thus excluded them from the bargaining unit. We address each argument in turn.

## A. Union Fliers

There are three union fliers at issue, each of which was distributed within 24 hours of the election. The first concerned employee April Pennington, who was discharged by Mitchellace on July 9, ostensibly for destroying company property. The union, however, claimed that Pennington was discharged because of her support for the union. On September 20, the NLRB issued an unfair labor practice complaint against Mitchellace on this basis.

On the morning of September 22, one day before the election, the union distributed a flier entitled "Justice Served." This flier accurately reported that the Board had issued a complaint against Mitchellace, but went on to state that Mitchellace had been found guilty of threatening and firing workers for union activity, and that the company would be required to reinstate Pennington and give her backpay. The flier was signed by the union. Contrary to the union's flier, the Board's complaint did not constitute a

final unfair labor practice determination. Mitchellace thus distributed its own flier, entitled "More Union Lies!!!", which accurately reported that Mitchellace had not been found guilty of an unfair labor practice and had not been ordered to reinstate Pennington or pay her lost wages. The flier invited the employees to verify its information with the NLRB and provided the appropriate telephone number. The flier was placed on a table near the entrance to the plant, and was available to the day and afternoon shifts. Inexplicably, Mitchellace removed the flier before the night shift had an opportunity to see it. The union replied with a flier entitled "Justice," which correctly stated that the NLRB had issued a complaint against Mitchellace on charges of threatening and firing workers for union activity. The flier also stated, however, that the complaint indicated that the Cincinnati NLRB office had found the company guilty of wrongdoing.

The final flier at issue was distributed on the morning of the election, and concerned the bargaining unit status of the Kelly Services workers. The union had sought review of the decision excluding the Kelly Services workers, and the NLRB denied review on September 23, the day of the election. Mitchellace and the union were informed of the Board's decision at a pre-election conference at 5:30 a.m., one-half hour before the polls opened. At 5:00 a.m., however, the union began distributing a 12–page booklet of campaign material, inserted into which was a one-page flier entitled "Election Update." The flier stated that the NLRB "has reason to believe that the Cincinnati branch office *may have made a mistake when they excluded Kelly workers from voting*. Therefore, they are investigating this issue further and still have not made a determination either way." (Emphasis in original.) The flier explained that the election would continue as planned, but that the Board might impound the votes until a final decision on the Kelly Services workers. *"Regardless of the Labor Board's decision—today is an IMPORTANT DAY—it is the day Mitchellace workers stand up once and for all and make a CHANGE!"* (Emphasis in original.) The

union pulled this flier after being informed of the Board's decision.

Mitchellace filed objections to the union's fliers following the election. The hearing officer concluded that the fliers were not likely to have given voters the misleading impression that the Board favored one of the parties to the election, and recommended that the objections be overruled. The hearing officer relied on Board authority, regardless of the fact that the Board's standard of review was modified by this court in *Van Dorn Plastic Machinery Co. v. NLRB*, 736 F.2d 343 (6th Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985). The Board analyzed the fliers under *Van Dorn,* however, and concluded that "the two fliers distributed by the Union did not contain such pervasive misrepresentations or artful deceptions as to affect employee free choice in the election." The Board thus rejected Mitchellace's objections.

### Discussion

■ The Board's finding that an election was conducted under fair conditions will not be disturbed on appeal where there is substantial evidence in the record as a whole to support its conclusions. *Kux Mfg. Co. v. NLRB,* 890 F.2d 804, 808 (6th Cir.1989). The party seeking to overturn an election bears the burden of showing that it was not conducted fairly. *Dayton Hudson Dep't Store Co. v. NLRB,* 987 F.2d 359, 363 (6th Cir.1993); *NLRB v. Superior Coatings, Inc.,* 839 F.2d 1178, 1180 (6th Cir.1988). The objecting party must show " 'not only that the unlawful acts occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election.' " *Id.* (quoting *NLRB v. MacDonald's Indus. Prods.,* 731 F.2d 340, 342 (6th Cir.1984)).

■ The NLRB has held that it will not set aside an election based solely on misleading campaign statements, and will intervene only in cases where "a party has used forged documents which render the voters unable to recognize propaganda for what it is." *Midland Nat'l Life Ins. Co.,* 263 N.L.R.B. 127, 133, 1982 WL 23832 (1982). In this court, however, the standard is somewhat more flexible.

> There may be cases where no forgery can be proved, but where the misrepresentation is so pervasive and the deception so artful that employees will be unable to separate truth from untruth and where their right to a free and fair choice will be affected. We agree with the Board that it should not set aside an election on the basis of the substance of representations alone, but only on the deceptive manner in which representations are made.

*Van Dorn Plastic Mach. Co. v. NLRB,* 736 F.2d 343, 348 (6th Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985).

■ Application of the *Van Dorn* standard to the fliers at issue in this case reveals no basis on which to disturb the outcome of the election. The fliers contained misrepresentations, but this alone is not determinative. Rather, pursuant to *Van Dorn,* we must look to the manner in which the representations were made. Mitchellace's principal objection is based on the fact that the fliers were distributed within 24 hours of the election. While timing is relevant to the determination whether a misrepresentation is so pervasive and artful as to affect employees' right to a free and fair choice, this court has never held that timing alone is determinative.[1] Rather, this court has considered other factors, including whether the employer was aware of the communication and had an opportunity to respond, the extent of the misrepresentation, whether the source of the misrepresentation was identified, and whether there is evidence that employees actually were affected by the misrepresentation. In

---

1. Mitchellace urges us to adopt a 24–hour rule, and hold that an employer is presumptively unable to respond to misrepresentations made during this time period. Such a rule would be inconsistent with *Van Dorn.* Moreover, the Board enjoys a "particularly broad discretion 'in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees.' " *Van Dorn,* 736 F.2d at 347 (quoting *NLRB v. A.J. Tower Co.,* 329 U.S. 324, 330, 67 S.Ct. 324, 327–28, 91 L.Ed. 322 (1946)). We, therefore, will not undertake to set forth rules for the conduct of elections.

*Superior Coatings,* 839 F.2d at 1182–83, for example, the court rejected an election challenge based on a misrepresentation made only seven hours before the polls opened, noting that the representations were substantially correct, and that the employer was aware of the representations and had an opportunity to dispel whatever misconception resulted. In *NLRB v. Hub Plastics, Inc.,* 52 F.3d 608, 612–13 (6th Cir.1995), on the other hand, the court remanded for findings under *Van Dorn* where the union misrepresentation, reinforced with an ambiguous Board charge form, was made two days before the election, and where there was evidence that employees were affected by the misrepresentation and believed that the employer had lied to them. Likewise, in *Dayton Hudson Department Store Co. v. NLRB,* 79 F.3d 546, 551 (6th Cir.1996), *petition for cert. filed,* 64 U.S.L.W. 3839 (U.S. June 10, 1996) (No. 95–1987), the court held that a letter containing a gross misrepresentation and mailed to employees three days before the election, did not provide a basis for setting aside the election, where the authors of the letter were known to be allied with the union, and where the union won by a large margin.

In this case, all of the fliers were clearly identified as union materials, and there can be no claim that the employees were confused as to the source of the fliers. The union did not purport to speak on behalf of the Board, and did not reinforce its message through use of Board forms or documents. The Pennington fliers were distributed one day before the election; Mitchellace knew about the fliers, and was able to distribute an effective counter-flier of its own. The record reflects that one employee asked the company president about the NLRB complaint, and presumably heard Mitchellace's side of the story as a result. No other effect on employees was demonstrated. The situation is somewhat different with respect to the Kelly Services workers flier, in that Mitchellace had no opportunity to respond before the polls opened. The only questionable aspect of that flier, however, was the statement that the NLRB "has reason to believe" that the Cincinnati branch "may have made a mistake" in excluding the Kelly Services workers from the bargaining unit. Significantly,

the flier accurately cautioned that the NLRB had not made a final determination on the issue, and that it was important to vote. Rather than discouraging employees from voting, this flier likely would have had the opposite effect, urging, in essence, that each vote was critical. Admittedly, the final vote was close. There was no evidence, however, that the handfull of eligible employees who chose not to vote were discouraged from doing so by the union's fliers.

■ Disturbing the results of a representation election on the basis of campaign misrepresentations is a serious measure, justified only where the "misrepresentation [was] so pervasive and the deception so artful that employees [were] unable to separate truth from untruth[.]" *Van Dorn,* 736 F.2d at 348. Mitchellace simply has not demonstrated that the union's fliers, viewed singly or in combination, tainted the election as required by *Van Dorn.* We therefore deny Mitchellace's petition for review as to this issue.

### B. Bargaining Unit Status of Holly Boggs and Stacey Clark

Mitchellace also challenges the outcome of the election on the ground that the Board improperly excluded Holly Boggs and Stacey Clark from the bargaining unit and thus disregarded their votes. The bargaining unit was defined to include production and maintenance employees, and to exclude office clerical employees. Whether Boggs and Clark belong in the unit depends on whether they are plant or office clericals.

Mitchellace's office staff reports to the office manager, who in turn reports directly to Mitchellace's president. The production staff, on the other hand, reports to the plant manager. Unlike production employees who work on all three shifts, office employees work only on the day shift.

Boggs and Clark are office employees paid on the office pay scale, and report directly to the office manager. Boggs and Clark are data entry clerks responsible for entering production data into a computer, and generating production reports for all shifts. Their computers require a dust-free environment, and cannot be located in the production areas

of the plant. In addition to Boggs and Clark, three bargaining unit employees perform some data entry functions. These employees' principal responsibilities are in production departments, and they do not work under the office manager's supervision.

Much of Boggs' time is spent preparing computerized labels, and Clark performs this task when Boggs is absent. Boggs also assists in preparing production norms, which are used to evaluate employee and machine productivity. Boggs has acted as a judge in the company's "good housekeeping program," pursuant to which an office employee evaluates production departments for cleanliness.[2]

Because the production reports and label requests are tied to production departments, Boggs and Clark are in contact with production supervisors and floor leaders. The documents from which the production reports are generated are left in their mailboxes, and additional information, if needed, is communicated by telephone. Clark estimated that she enters the production area twice a month, and Boggs estimated that she does so once a week. While Boggs and Clark interact more often with production employees, they are included in the office social circle. They attend the office staff birthday parties, and the office Christmas party.

### Discussion

 The Board concluded that Boggs and Clark do not share a community of interests with production or maintenance employees, and therefore do not belong in the bargaining unit. Their ballots were disregarded, resulting in a union victory. The Board is given broad discretion in making a bargaining unit determination, and in resolving whether certain employees belong in the bargaining unit. The Board's decision on these matters will be upheld unless the employer establishes that it is arbitrary, unreasonable, or an abuse of discretion. *Bry–*

**2.** Boggs and Clark have worked on a limited basis in production areas when the need arose. It does not appear that they were assigned to this work, however, or that they were considered substitutes. Rather, when extra help was needed, the company posted the opportunity, and interested employees enlisted. Boggs and Clark

*Fern Care Ctr., Inc. v. NLRB,* 21 F.3d 706, 709 (6th Cir.1994); *NLRB v. Hardy–Herpolsheimer,* 453 F.2d 877, 878 (6th Cir.1972). The Board's factual findings, if supported by substantial evidence, are conclusive. "Determining an appropriate bargaining unit is closely tied to the unique facts of any given case.... A Board decision, 'if not final, is rarely to be disturbed.'" *Bry–Fern Care Ctr.,* 21 F.3d at 709 (quoting *Packard Motor Car Co. v. NLRB,* 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947)).

 Pursuant to long-standing Board policy, office and plant clerical employees are not joined in the same bargaining unit because they do not share a "community of interests." The community of interests test considers several factors:

 (1) similarity in skills, interests, duties, and working conditions;

 (2) functional integration of the plant, including interchange and contact among the employees;

 (3) the employer's organizational and supervisory structure;

 (4) the bargaining history; and,

 (5) the extent of union organization among the employees.

*Bry–Fern Care Ctr.,* 21 F.3d at 709.[3]

Mitchellace does not challenge the Board's policy or the reasons justifying it. Mitchellace contends, however, that the Board erroneously characterized Boggs and Clark as office clericals rather than as plant clericals. The record does not support Mitchellace's claim. Looking at the first factor, Boggs and Clark have some data entry duties in common with a few plant clericals. Unlike those employees, however, Boggs and Clark have no production department duties. Looking at the second factor, Boggs and Clark interact more frequently with production employees than they do with office employees on work-related matters. They seldom visit the production areas of the plant, however, and

do not substitute for other office clerical employees.

**3.** Given Mitchellace's lack of a bargaining history, the fourth and fifth factors are not relevant.

are included in office social functions. The facts pertinent to the third factor are the most instructive. Unlike production employees (including those who perform data entry functions), Boggs and Clark work only the day shift; are paid on the office pay scale; and are supervised by the office manager, subject to review by the company president. Unlike production employees, Boggs and Clark cannot compete for good housekeeping awards; Boggs, however, has judged production departments in this program. In sum, the record amply supports the Board's determination,[4] and we cannot conclude that its decision was arbitrary or unreasonable, or constituted an abuse of discretion. Accordingly, we deny Mitchellace's petition for review with respect to this aspect of the Board's order.

## II.

### Case No. 95–5219: Reinstatement Order

April Pennington was one of three employees discharged during the organizational campaign, and another employee was denied a raise during this period. The NLRB issued a complaint against Mitchellace alleging the company terminated or otherwise discriminated against these employees because of their support for the union. Following a post-election hearing, the ALJ concluded that Mitchellace had discharged Pennington and Rick Flanery and denied Scott Harrell a pay raise because of their support for the union. The ALJ recommended entry of an order requiring Mitchellace to cease and desist from discharging or otherwise discriminating against employees for supporting the union, or "[i]n any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act." The ALJ further recommended that Mitchellace be re-

quired to make the employees whole for lost wages and to offer immediate reinstatement to Pennington and Flanery.

Pursuant to statute and regulation, an ALJ's recommended disposition automatically becomes the order of the NLRB if exceptions to the recommendation are not filed within 28 days. 29 U.S.C. § 160(c); 29 C.F.R. §§ 102.46, 102.48. Mitchellace requested and was granted an extension to October 20, 1994, to file exceptions to the ALJ's decision. Mitchellace then wrote to the NLRB's local compliance supervisor, proposing that it be found in compliance upon its satisfaction of all aspects of the ALJ's decision, except that portion requiring reinstatement of Pennington and Flanery. The union reported that Pennington and Flanery had waived reinstatement, and agreed to Mitchellace's proposal. Relying on this agreement, Mitchellace did not file exceptions to the ALJ's decision by the October 20 deadline. The compliance supervisor later confirmed the agreement, and advised Mitchellace that when all affirmative terms of the Board's order except reinstatement had been complied with and there were no reported violations of its negative provisions, Mitchellace would be notified that the case was closed for compliance.

The parties did not communicate their agreement to the NLRB. As a result, the Board entered an order adopting the findings and conclusion of the ALJ, and ordering that Mitchellace take the action set forth in the ALJ's recommended order. The Board's order, dated November 2, 1994, did not incorporate the agreement regarding the waiver of reinstatement.

On November 28, the union filed another unfair labor practice charge against Mitchellace. The NLRB issued a complaint on this charge, alleging that between July and Octo-

---

4. Board precedent supports the characterization of Boggs and Clark as office clericals. Particularly persuasive is *Cook Composites and Polymers Co.*, 313 NLRB 1105, 1994 WL 146075 (1994), in which the Board held that data entry employees should be excluded from the bargaining unit where their contact with unit employees was limited to picking up batch tickets several times a day and making occasional trips to the shipping area. "Clericals whose principal functions and

duties relate to the general office operations and are performed within the general office itself, are office clericals who do not have a close community of interest with a production unit. This is true even if those clericals spend as much as 25 percent of their time in the production area and have daily contact with production personnel." *Id.* at 1108 (citing *Container Research Corp.*, 188 NLRB 586, 587 (1971)).

ber 1994 Mitchellace selectively enforced its bulletin board rule by prohibiting employees from posting materials about the union, threatened employees with discipline for discussing or posting information about the union, and took disciplinary action against employees because of their union support. Due to Mitchellace's alleged failure to comply with the negative provisions of the Board's November 2 order, the Board elected to seek enforcement of that order in this court. Mitchellace opposes the Board's application because the order does not reflect the agreement regarding its obligation to reinstate Pennington and Flanery.

### Discussion

An NLRB remedial order is not self-executing, and the "respondent can violate it with impunity until a court of appeals issues an order enforcing it." *NLRB v. P*I*E Nationwide, Inc.*, 894 F.2d 887, 890 (7th Cir.1990). The Board is justified in seeking enforcement even when the respondent has fully complied with the Board's order, a rule premised on the Board's legitimate interest in obtaining a court decree that will serve as a basis for contempt proceedings. *NLRB v. Michigan Conference of Teamsters Welfare Fund*, 13 F.3d 911, 919–20 (6th Cir.1993) (citing *NLRB v. Mexia Textile Mills, Inc.*, 339 U.S. 563, 567, 70 S.Ct. 833, 833, 94 L.Ed. 1067 (1950)). While the Board does not seek enforcement of its orders as a matter of course, its interest in doing so is increased where evidence indicates that the company has continued to engage in unfair labor practices.

Mitchellace discriminated against employees because of their support for the union, and the ALJ concluded that the company should reinstate the discharged employees and desist from committing discriminatory or retaliatory acts in the future. Mitchellace makes no legal or evidentiary challenge to the Board's order adopting in toto the ALJ's decision. Rather, Mitchellace's sole objection is that the order does not reflect the compliance agreement regarding reinstatement. The question is whether we may, or should, recognize this

agreement by granting only limited enforcement.

The Board contends that this court lacks jurisdiction to consider Mitchellace's objection to the Board's order under § 10(e) of the National Labor Relations Act, which provides that "[n]o objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). Section 10(e) serves two functions: to allow factual controversies to be threshed out before the Board; and to permit the Board to address the legal issues in the first instance, and thereby bring its expertise to bear on the questions presented. *NLRB v. United States Postal Serv.*, 833 F.2d 1195, 1201 (6th Cir.1987). In *Southern Moldings, Inc. v. NLRB*, 728 F.2d 805, 806 (6th Cir. 1984) (en banc), this court held that it lacked jurisdiction to resolve a legal issue not raised before the Board prior to its decision or upon reconsideration.

Judging from the lack of reported cases addressing the effect to be given to a compliance agreement entered into after issuance of the ALJ's decision, but before entry of the Board's order, this case is highly unusual. In deciding whether we may entertain Mitchellace's objection to the Board's order, however, we find it significant that Mitchellace does not challenge the order, even that part requiring reinstatement of Pennington and Flanery, on legal or evidentiary grounds. Thus, there were no factual or legal controversies requiring Board resolution in the first instance. Application of § 10(e) to the facts of this case would not further the purpose of that provision, and we are not persuaded that the jurisdictional bar applies here. Indeed, counsel for the Board acknowledged at oral argument that this court has the discretion to grant only limited enforcement of the Board's order.

The remaining question is whether we should exercise our discretion as Mitchellace requests. A similar question was addressed in *NLRB v. Quinn Restaurant Corp.*, 14 F.3d 811 (2d Cir.1994), a case in which the Board sought enforcement of an

order which, for the most part, provided for appropriate remedial relief, but which also required the company to bargain with a union that had disclaimed any interest in representing the employees. The Board sought full enforcement, regardless of the fact that enforcement of the bargaining portion of the order would subject the company to contempt sanctions for its failure to comply. The court held that it was not required to enter such an "obsolete and erroneous" order in the hope that the Board subsequently would avoid it. *Id.* at 818.

Just as it did in *Quinn,* the Board here seeks full enforcement of an order regardless of the fact that a portion of it has become obsolete. Significantly, the Board does not claim that the employees' waiver of reinstatement is invalid, or that the employees remain entitled to reinstatement for a reason not reflected in the record. Nor does the Board dispute that its local compliance supervisor approved the waiver of reinstatement. Acknowledging that full enforcement would subject Mitchellace to contempt sanctions upon its failure to comply, the Board promises only that it will not require compliance with that portion of the order which has been resolved by the agreement of the parties. Like the court in *Quinn,* however, we see no reason to enter an order that "mocks reality." *Id.* at 818. We thus decline to grant enforcement of that portion of the order requiring Mitchellace to reinstate Pennington and Flanery.

### III.

In case Nos. 94–6540 and 94–6652, we **DENY** Mitchellace's petition for review and **GRANT** the Board's cross-application for enforcement. In case No. 95–5219, we **GRANT** the Board's application for enforcement of all portions of its order **EXCEPT** for that portion which requires Mitchellace to reinstate employees April Pennington and Rick Flanery.