*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name:  12a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

NATIONAL LABOR RELATIONS BOARD,
                                  *Petitioner,*

          *v.*                                         No. 10-2549

ADT SECURITY SERVICES, INC,
                                  *Respondent.*

On Application for Enforcement of an Order of the
National Labor Relations Board.
No. 7-CA-51288.

Decided and Filed:  August 3, 2012

Before:  ROGERS and STRANCH, Circuit Judges; PEARSON, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Linda Dreeben, Robert J. Englehart, Zachary R. Henige, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Petitioner.  Bernard P. Jeweler, OGLETREE, NASH, SMOAK & STEWART, P.C., Washington, D.C., for Respondent.

_____

**OPINION**

_____

    JANE B. STRANCH, Circuit Judge.  This case arises from the decision of the National Labor Relations Board that ADT engaged in unfair labor practices and is before this court on the Board's petition to enforce its remedial Order. The central question presented is whether the unit, long represented by Local 131 of the International Brotherhood of Electrical Workers (Union), retained its separate identity and remained an appropriate bargaining unit following ADT's decision to close the unionized plant,

----

    [*] The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

assign those employees to an unrepresented plant, and withdraw recognition of the Union. Because substantial evidence supports the Board's conclusion that the historic unit continued to be an appropriate unit and because the Board's Order was a proper exercise of its remedial authority, we **ENFORCE** the Board's Order that ADT rescind its unilateral actions and recognize and bargain in good faith with the Union.

## I.  BACKGROUND

### A.    Factual Background

ADT Security Services, Inc. is engaged in the national sale, installation, and service of burglar and fire alarms and other security devices. ADT's sales operations are separate from its installation and service operations and its service employees conduct their work of installing and servicing equipment at customer sites, not at the sales and service offices. Sales activities, storage of parts, administrative activities, and management offices are all located at the offices.

For almost twenty-nine years, since June 29, 1979, ADT recognized Local Union 131 as the exclusive representative of a unit of service employees, defined under the agreement as "all full-time and regular part-time servicemen employed by [ADT] at its Kalamazoo, Michigan facility; but excluding branch managers, service supervisors, chief clerks, office clerical associates, professional associates, guards, sales associates and supervisors as defined in the Act."

On May 19, 2008, ADT manager Roy Rogers held a meeting where he informed the Kalamazoo employees that effective June 2, ADT would close its Kalamazoo facility, would consolidate its operations at the Wyoming, Michigan office, and would no longer recognize the Union as their bargaining representative. Rogers explained that the employees would continue to:  service the same areas; go to their job assignments from their homes; and receive the same hourly wage rates and piece rates. However, he said their overtime and drive-time entitlements would be decreased. The employees would be paid overtime for hours worked over forty in one week, instead of over eight in one day, and they would not receive compensation until their commutes to their job

sites exceeded forty-five minutes, rather than thirty minutes as set forth in the collective bargaining agreement. The rules for determining the employees' vacation eligibility also changed, which resulted in increased vacation time for some employees.

ADT did not notify the Union of the changes to the employees' working conditions. Instead, it sent the Union a letter announcing the consolidation of the fourteen unionized Kalamazoo employees with the twenty-seven unrepresented servicemen working in the Wyoming office. Because the Union would not represent a majority of employees located in the Wyoming facility, ADT announced it was withdrawing recognition from the Union as the representative of the former Kalamazoo employees, effective June 2.

As promised, in June 2008 ADT closed its Kalamazoo facility and reassigned the service employees to operate out of its Wyoming facility, located forty-five miles away from Kalamazoo. The former Kalamazoo employees continued to service southwestern Michigan. ADT continued to lease the Kalamazoo facility and two nonunionized sales employees continued to operate out of that office. At the time recognition of the Union was withdrawn, there was a collective bargaining agreement in effect that extended from January 24, 2007 until January 22, 2010.

Before and after June 2, 2008, the former Kalamazoo employees continued to perform the same work in the same distinct geographical area under largely unchanged terms and conditions. The collective bargaining unit referred to the Kalamazoo "service territory" and the Kalamazoo employees continued to be assigned work within that territory after the closure of the Kalamazoo facility. Both before and after the closing, the servicemen's work assignments were made by a national dispatching center and the employees continued to perform work in the field.

Following consolidation, ADT adjusted the way parts were delivered to the Kalamazoo employees and slightly altered the supervision structure. Following June 2, for a period of about six weeks, the same two employees who had previously delivered parts to the Kalamazoo facility met the Kalamazoo employees in a supermarket parking lot located down the street from the closed Kalamazoo facility.

Thereafter, ADT shipped parts from the Wyoming office to the Kalmazoo employees' homes or delivered them to the employees' job sites or other prearranged locations. Starting in September—after the complaint in this case had been issued and shortly before the hearing was held—ADT began requiring certain Kalamazoo employees to report to the Wyoming warehouse once a week to get parts.

Prior to the consolidation, the Kalamazoo servicemen reported to a local supervisor, Mike Swift. Swift, in turn, reported to Roy Rogers, the branch manager for both Kalamazoo and Wyoming. The closure of the Kalamazoo facility eliminated Swift's position and the former Kalamazoo employees began reporting to Dave Fitzsimmons and Dan Beschel, who supervised the Wyoming servicemen. In late September, however, the supervisory structure was again changed and Rogers, Beschel, and Fitzsimmons managed the Kalamazoo and Wyoming servicemen, with Rogers being the senior manager in the office.

Before and after June 2, when numerous outages or malfunctions caused by a storm or other disaster occurred, installers would assist service technicians and ADT would, if necessary, assign servicemen from other locations. On such occasions, Kalamazoo servicemen might assist in the Wyoming service territory and vice versa.

**B.     Procedural History**

In May and July 2008, the Union filed unfair-labor-practice charges against ADT based on ADT's withdrawal of recognition from the Union as the bargaining representative of the Kalamazoo bargaining unit. On August 12, General Counsel for the Board filed a complaint against ADT alleging violations of Sections 8(a)(1) and (5) of the National Labor Relations Act (the Act) by withdrawing recognition from the Union and thereafter making certain unilateral changes. Following a hearing, an Administrative Law Judge (ALJ) issued a decision and recommended order on December 30, 2008 in which he found merit to the complaint allegations. ADT filed timely exceptions to the ALJ's decision, seeking the Board's review.

On March 12, 2009, before the issuance of the Board's decision, the Regional Director filed for a preliminary injunction against ADT under Section 10(j) of the Act, 29 U.S.C. § 160(j). The petition sought an interim order requiring ADT to recognize and bargain in good faith with the Union, reinstate the collective bargaining agreement, and rescind the unilateral changes to the employees' working conditions. The district court denied the Director's petition and we reversed. We found reasonable cause to believe that an unfair labor practice had occurred and remanded the case for the district to determine in the first instance whether an injunction would be just and proper. *Glasser v. ADT Sec. Servs., Inc.*, 379 F. App'x 483, 488-89 (6th Cir. 2010).

On September 30, 2010, before the district court decided the injunction issue on remand, the Board issued its Order, ending the district court's jurisdiction under Section 10(j). The Board affirmed the ALJ's findings and conclusions and adopted, with slight modification, the recommended remedial order. The Board's Order requires ADT to rescind the withdrawal of recognition, extend recognition to the Union as the bargaining representative of its former Kalamazoo employees, reinstate the collective bargaining agreement without retracting any benefit conferred, and bargain collectively in good faith with the Union. After ADT refused to comply, General Counsel for the Board applied to this court for enforcement of the Board's Order.

## II.  DISCUSSION

### A.      Standard of Review

Our review of the Board's decisions is limited. *NLRB v. Dole Fresh Vegetables, Inc.*, 334 F.3d 478, 484 (6th Cir. 2003). The Board's factual findings and its application of the law to those facts are conclusive "if supported by substantial evidence on the record considered as a whole." *Id.* (quoting 29 U.S.C. § 160(e)). "This test requires not the degree of evidence which satisfies the court that the requisite fact exists, but merely the degree that could satisfy the reasonable fact finder." *Frenchtown Acquisition Co. v. NLRB*, 683 F.3d 298, 304, (6th Cir. 2012) (quoting *Rochelle Waste Disposal, LLC v. NLRB*, 673 F.3d 587, 592 (7th Cir. 2012)) (internal quotation marks omitted); *see also*

*Williamson v. NLRB*, 643 F.3d 481, 485 (6th Cir. 2011) (determining that substantial evidence is evidence that a reasonable person might accept as adequate to uphold the Board's decision, "even if there is also substantial evidence for an inconsistent conclusion"). We may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).

Although we review the Board's legal conclusions de novo, *NLRB v. Good Shepherd Home, Inc.*, 145 F.3d 814, 816 (6th Cir. 1998), we uphold the Board's interpretation of the Act "as long as it is a permissible construction of the statute," *Williamson*, 643 F.3d at 485 (internal quotation marks omitted). As we noted in *NLRB v. Plainville Ready Mix Concrete*, "the facts and complexities of the bargaining process are 'particularly amenable to the expertise of the Board as factfinder,' and 'few issues are less suited to appellate judicial appraisal than evaluation of bargaining processes or better suited to the expert experience of a Board [that] deals constantly with such problems.'" 44 F.3d 1320, 1326 (6th Cir. 1995) (quoting *Bolton-Emerson, Inc. v. NLRB*, 899 F.2d 104, 108 (1st Cir. 1990)).

**B.       ADT's Withdrawal of Recognition of Local Union 131**

ADT claims the Board erred in its determination that the fourteen former Kalamazoo employees remained an appropriate bargaining unit following June 2. ADT asserts that its withdrawal of recognition of the Union was lawful because, following consolidation of the Kalamazoo and Wyoming servicemen, the Kalamazoo employees were no longer a distinct bargaining unit.

Section 9(b) of the Act vests in the Board authority to determine "the unit appropriate for the purposes of collective bargaining." 29 U.S.C. § 159(b). Determining an appropriate bargaining unit is closely tied to the unique facts of any given case. *Bry-Fern Care Ctr., Inc. v. NLRB*, 21 F.3d 706, 709 (6th Cir. 2009). In making a unit determination, the Board must select an "appropriate" bargaining unit. 29 U.S.C. § 159(b). "Often there will be a range of appropriate units,

and the Board is not required to select the *most* appropriate unit." *Bry-Fern*, 21 F.3d at 709 (emphasis in original) (citing *American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 610 (1991)).

In evaluating the appropriateness of the Board's designation of a bargaining unit, we apply a "community of interests" test which requires simply that groups of employees in the same bargaining unit "share a community of interests sufficient to justify their mutual inclusion in a single bargaining unit." *Id.* The "community of interests" test includes the following factors: (1) similarity in skills, interests, duties and working conditions; (2) functional integration of the plant, including interchange and contact among the employees; (3) the employer's organization and supervisory structure; (4) the bargaining history; and (5) the extent of union organization among the employees. *Id.*

"Because of its wide experience, the Board should be given some deference in its selection of an appropriate bargaining unit through the application of the 'community of interests' test." *Armco, Inc. v. NLRB*, 832 F.2d 357, 362 (6th Cir. 1987) (citing *South Prairie Constr. Co. v. Local 627, Operating Eng'rs*, 425 U.S. 800 (1976)). The Board's ultimate determination as to the appropriate unit must be upheld unless it is arbitrary, unreasonable, or an abuse of discretion. *Id.* Therefore, although we review the Board's underlying factual findings for substantial evidence, we give the Board's ultimate weighing of those findings within the "community of interests" test more deference by applying an abuse of discretion standard of review.

Further, the Supreme Court has held that it is within the Board's purview to develop rules "to circumscribe and to guide its discretion" in deciding disputes over the appropriateness of a unit. *American Hosp. Ass'n*, 499 U.S. at 611-12. The Board has done so by determining that bargaining history between the parties impacts the balancing of factors in the "community of interests" test. Where an existing bargaining unit is present, "[t]his fact alone suggests the appropriateness of a separate bargaining unit," *Armco*, 823 F.2d at 363, and the Board has required "compelling circumstances" to overcome the significance of the bargaining history. *Fisher Broadcasting, Inc.*,

324 N.L.R.B. 256, 261 (1997). Such a determination is both within the Board's authority and its expertise. And it applies here. ADT is required to establish that compelling circumstances overcome the almost twenty-nine-year bargaining history between the parties. We turn to application of these standards to the facts.

There is no disagreement over the fact that, under the first factor of the community-of-interests test, both the Kalamazoo and Wyoming servicemen have similar skills and duties. However, they continued to exercise those skills in their own distinct geographical areas. Under the second factor, the Board found that the record does not establish that the Kalamazoo servicemen were "absorbed" or "integrated" into a unit including all the servicemen who work out of the Wyoming facility. The Board noted that "some of the most fundamental terms of employment that distinguished the Kalamazoo servicemen from the Wyoming servicemen . . . not only remained intact following the closure of the Kalamazoo facility, but continued to separate them from the Wyoming servicemen." Specifically, relying on the different "labor markets" in the Kalamazoo service territory and the Wyoming/Grand Rapids service territory, ADT continued to pay the former Kalamazoo servicemen lower wages and lower piece rates than its Wyoming servicemen, even when the Kalamazoo servicemen answered calls in the Wyoming service territory. The Board also noted that the ADT dispatch center maintained separate "on call" lists for emergencies in the Kalamazoo and Wyoming service territories. Under our deferential review, there is substantial evidence to support the Board's factual conclusion that the Kalamazoo employees were not functionally integrated into the Wyoming facility and remained a distinct unit of servicemen.

Relating to the third factor, though previously working under different intermediate supervisors, following consolidation both Wyoming and Kalamazoo servicemen worked under the same intermediate supervisors. No change was made to senior supervision as Rogers was the senior manager over both units of servicemen before and after June 2. Although common supervision is a factor favoring a determination that a unit has lost its separate identity, the Board weighed this factor less heavily because the servicemen work out of their homes, have no onsite supervision, and

do not see their supervisors on a daily basis. *See In re Comar, Inc.*, 339 NLRB 903, 909 (finding a distinct, appropriate bargaining unit remained notwithstanding common supervision following relocation), *enf'd* 111 F. App'x 1 (D.C. Cir. 2004). The Board's finding that the servicemen were relatively independent from their intermediate supervisors is clearly supported by substantial evidence given the consistent testimony that the servicemen's regular contact with their supervisor was almost exclusively by phone with only sporadic in-person contact. In fact, the ALJ noted that the supervisor "automatically calls them every Monday" and that "[a]pparently he just goes down the list."

Given the long and well established bargaining history between ADT and the Union, factors four and five weigh strongly in favor of finding that the Kalamazoo employees remained a distinct bargaining unit. The Board found the change in intermediate supervisors did not amount to "compelling circumstances" that would overcome the twenty-nine year bargaining history between the Union and ADT and the fact that the Kalamazoo servicemen worked in their own separate historical unit that maintained its integrity and remained distinct from the Wyoming servicemen.

We hold that the Board's underlying factual conclusions, which form the basis for its ultimate determination, are supported by substantial evidence. Based on those findings, the Board did not abuse its discretion in (1) its application of the "community of interests" test, (2) its determination that ADT had not shown "compelling circumstances" to overcome the parties' long bargaining history, and (3) its conclusion that the former employee unit maintained its integrity following the closure of the Kalamazoo facility and continued to be an appropriate unit with which ADT was obligated to bargain. Given the deference to which the Board is entitled, we decline to disturb the Board's holding that ADT violated Sections 8(a)(1) and 8(a)(5) of the Act. We turn now to the propriety of the Board's Order.

**C.     Clarity of the Board's Order**

In its Order, the Board defined the bargaining unit as "servicemen *regularly assigned to work in the Kalamazoo service territory . . . .*"  In doing so, the Board modified the definition from the collective bargaining agreement, which included "servicemen *employed by the Respondent at its Kalamazoo, Michigan facility . . . .*" ADT argues that this modification is beyond the Board's power and that the description of the bargaining unit is impermissibly vague.

The Board is granted broad discretion in fashioning remedies for violations of the Act.  As the Supreme Court has noted, "the Board draws on a fund of knowledge and expertise all its own, and its choice of remedy must therefore be given special respect by reviewing courts."  *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 613 n.32 (1969); *accord Indiana Cal-Pro, Inc. v. NLRB*, 863 F.2d 1292, 1300 (6th Cir. 1988).  Therefore, we will not disturb a Board's remedial order "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act."  *Virginia Elec. & Power Co. v. NLRB*, 319 U.S. 533, 540 (1943). There is no such showing here.

The Board's modification of the bargaining-unit description merely reflects the realty that those employees are no longer employed at the Kalamazoo facility.  Having already determined that the unit retained its separate identity and remained an appropriate bargaining unit following consolidation, the Board's modification to more accurately describe the bargaining unit is within the Board's power and discretion.  *See In re Comar Inc.*, 339 N.L.R.B. at 904 (requiring employer to continue to bargain with representative of relocated employees and describing the unit in terms of those "performing the work that was formerly done" at the previous plant), *enf'd* 111 F. App'x 1 (D.C. Cir. 2004).

Further, we find that the Board's choice to geographically describe the unit is not a patent attempt to achieve ends which do not effectuate the policies of the Act.  The Board's choice appropriately flows from the evidence in the record: ADT still makes the distinction between service areas, including the Kalamazoo service territory, using a

computer numbering system that separately identifies jobs performed in a particular area; ADT still assigns Kalamazoo servicemen to work in a specific subdivision of the Kalamazoo service territory as delineated by a color-coded map; and, most notably, ADT still pays Kalamazoo servicemen a lower hourly and piece rate based on a discernable labor market in the Kalamazoo service territory. It is within the Board's purview to determine the appropriate bargaining unit and to develop standards for ascertaining whether one unit is more appropriate than another. *See Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 611-12 (1991). The Board's choice to describe the bargaining unit using the same methods of distinction that ADT uses to assign work and pay to its employees cannot be said to deviate from the policies of the Act.

## III.  CONCLUSION

For the foregoing reasons, we **GRANT** the Board's Application for Enforcement of its Order.