**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0475n.06

No. 14-2606

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 16, 2016
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, ) <br> ) <br> **Petitioner,** ) <br> ) <br> v. ) <br> ) <br> KLOCHKO EQUIPMENT RENTAL ) <br> COMPANY, ) <br> ) <br> **Respondent.** ) <br> ) | ON PETITION FOR REVIEW <br> FROM THE NATIONAL LABOR <br> RELATIONS BOARD <br><br> **OPINION** |

**Before: BATCHELDER, MOORE, and McKEAGUE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** This case concerns Brian Miller, the sole mechanic at an equipment rental company's satellite office. Miller wanted to join the collective-bargaining unit of mechanics and truck drivers at the company's main office, but the company opposed his efforts. In a series of decisions, the National Labor Relations Board ("NLRB") allowed Miller to join the collective-bargaining unit and then concluded that the company was violating federal labor laws by refusing to recognize and bargain with the unit once Miller joined it. The NLRB now applies for enforcement of its final decision pursuant to 29 U.S.C. § 601(e). For the reasons set forth below, we **ENFORCE** the NLRB's final decision.

No. 14-2606, *NLRB v. Klochko Equipment Rental Co.*

## I.  BACKGROUND

### A.  Facts

Klochko Equipment Rental Company ("Klochko") is a Michigan-based company that rents and repairs construction equipment.  Joint Appendix Vol. I ("J.A. Vol. I") at 20 (Hr'g at 19) (Page ID #26); *id.* at 236 (Decision and Direction of Election at 1) (Page ID #242).  Its main office is in Melvindale, a southwest suburb of Detroit.  *See id.* at 236 (Decision and Direction of Election at 1) (Page ID #242).  This office is divided into an administrative space and an equipment repair shop.  *Id.* at 238 (Decision and Direction of Election at 3) (Page ID #244); *see also id.* at 53 (Hr'g at 52) (Page ID #59).  Local 324 of the International Union of Operating Engineers ("the Union") represents a unit of mechanics and truck drivers who work in the equipment repair shop.  *Id.* at 236 (Decision and Direction of Election at 1) (Page ID #242).

In 2010, Klochko opened a satellite office in Saginaw, 111 miles north of Melvindale. *Id.* at 238, 240 (Decision and Direction of Election at 3, 5) (Page ID #244, 246).  At first, only a sales employee worked in the satellite office.  *Id.* at 238 (Decision and Direction of Election at 3) (Page ID #244).  But in 2012, Klochko hired Brian Miller as the Saginaw location's sole mechanic.  *Id.*  This appeal concerns Miller's efforts to join the collective-bargaining unit in Melvindale.[1]

The collective-bargaining unit at issue consists of six mechanics and two truck drivers. Because the central question in this case is whether Miller and the six mechanics "share a

---

[1]Klochko also has a small rental office in Fairhaven, Michigan, staffed by a single employee, which is not at issue in this appeal.  *See* J.A. Vol. I. at 236 (Decision and Direction of Election at 1) (Page ID #242); *see also id.* at 40, 52 (Hr'g at 39, 51) (Page ID #46, 58).

community of interests sufficient to justify their mutual inclusion in a single bargaining unit," *see Kindred Nursing Ctrs. E., LLC v. NLRB*, 727 F.3d 552, 560 (6th Cir. 2013) (quoting *NLRB v. ADT Sec. Servs., Inc.*, 689 F.3d 628, 633 (6th Cir. 2012)), there is little information in the record about the two truck drivers other than that they are responsible for the transportation of equipment to and from jobsites. J.A. Vol. I. at 238 (Decision and Direction of Election at 3) (Page ID #244); *see also id.* at 20 (Hr'g at 19) (Page ID #26). Instead, the record focuses on the six mechanics.

The collective-bargaining unit's governing agreement classifies the six mechanics as class-A, class-B, class-C, or preventative-maintenance mechanics—with class-A mechanics being the most skilled and preventative-maintenance mechanics being the least skilled. *Id.* at 22–23 (Hr'g at 21–22) (Page ID #28–29); *see also id.* at 183–84 (Union Agreement at 34–35) (Page ID #189–90). The agreement further classifies class-A mechanics who travel to jobsites as "field mechanic[s]" (and, because of this additional travel, requires that Klochko pay them more). *Id.* at 23 (Hr'g at 22) (Page ID #29). Two of the collective-bargaining unit's mechanics are field mechanics and the remaining four are either class-B, class-C, or preventative-maintenance mechanics. *Id.* at 238 (Decision and Direction of Election at 3) (Page ID #244). The Melvindale equipment repair shop where they work, which is 5,000 square feet, is capable of handling a wide range of repairs. *Id.*

Because Miller is not part of the collective-bargaining unit, he is not classified as a class-A, class-B, class-C, or preventative-maintenance mechanic. But Timothy Korthals, Klochko's general manager, testified that although Miller performs some preventative-maintenance work on

the side, Miller "predominantly is on the road as a field mechanic." *Id*. at 19, 42 (Hr'g at 18, 41) (Page ID #25, 48). That the bulk of Miller's work is at jobsites as opposed to in the Saginaw facility is unsurprising, because, although Miller has the technical skills to do the work of a class-A mechanic, the Saginaw repair shop is only 100 square feet. *Id*. at 33 (Hr'g at 32) (Page ID #39); *id.* at 238 (Decision and Direction of Election at 3) (Page ID #244).

As one of only two employees in Saginaw, Miller has some additional responsibilities that the unit mechanics do not have. The other employee in the satellite office, Paul Daugharty, works in sales as an "area field representative[]." *Id.* at 238 (Decision and Direction of Election at 3) (Page ID #244); *see also id.* at 55–56 (Hr'g at 54–55) (Page ID #61–62). When Daugharty is out of the office, Miller has to fill in for him and respond to customer requests to rent or buy equipment. *Id.* at 240 (Decision and Direction of Election at 5) (Page ID #246). Miller has had to do this only once, when he executed a rental agreement with a customer (a Melvindale manager emailed Miller the contract). *Id.* The whole process took thirty minutes. *Id.*

The Melvindale mechanics all report to Frank Snyder, Klochko's service manager. *Id.* at 238 (Decision and Direction of Election at 3) (Page ID #244). The unit mechanics work from 7:30 A.M. to 4:00 P.M., plus overtime as needed. *Id.* at 241 (Decision and Direction of Election at 6) (Page ID #247). Their wages range, based on skill, from $16.31 an hour to $24.54 an hour. *Id.*; *see also id.* at 24 (Hr'g at 23) (Page ID #30); *id*. at 183–185 (Union Agreement at 34–36) (Page ID #189–91). Like the unit mechanics, Miller reports to Snyder. *Id.* at 238 (Decision and Direction of Election at 3) (Page ID #244). And like the unit mechanics, Miller works from 7:30 A.M. to 4:00 P.M., plus overtime as needed. *Id.* at 241 (Decision and Direction of Election at 6)

(Page ID #247).  Miller earns $18.08 an hour, which is less than what field mechanics earn, and less than what class-A mechanics earn, but within the range for unit mechanics generally.  *Id.*  Unlike unit mechanics, however, Miller does not earn more when he travels to jobsites.  *Id.* at 23, 84 (Hr'g at 22, 83) (Page ID #29, 90).

Klochko typically receives two types of customer calls:  requests for renting equipment and requests for servicing equipment.  *Id.* at 28–29 (Hr'g at 27–28) (Page ID #34–35).  Requests for renting equipment are tracked in the "request log," which is displayed on a television monitor in the Melvindale location's equipment repair shop, so employees can see what equipment they need to prepare for customers.  *Id.*  Requests for servicing equipment are logged in the "service call log."  *Id.* at 29 (Hr'g at 28) (Page ID #35).  This log is not displayed on the television monitor but instead is maintained by Snyder, the service manager.  *Id.*  Snyder notes customer requests for servicing equipment and then assigns mechanics (including Miller) to the requests, tracking the jobs from start to finish.  *Id.* at 239 (Decision and Direction of Election at 4) (Page ID #245); *see also id.* at 29 (Hr'g at 28) (Page ID #35).  Because Snyder is based in Melvindale, he usually assigns unit mechanics to different customer requests in person.  *Id*. at 29 (Hr'g at 28) (Page ID #35).  If the unit mechanics are on the road, Snyder calls them on their cell phones to give them their next assignment.  *Id.*  In contrast, Snyder speaks to Miller *only* over the phone; they do not interact in person.  *Id.* at 29, 118 (Hr'g at 28, 117) (Page ID #35, 124).  Indeed, Snyder has been to Saginaw only once, and Miller has been to Melvindale only once—for training.  *Id.* at 66, 118 (Hr'g at 65, 117) (Page ID #72, 124).  If Snyder and Miller cannot reach each other over the phone, the "request log" and the "service call log" are also kept as Google

Documents (or "Google Docs"),[2] to which Miller has access. *Id.* at 239–40 (Decision and Direction of Election at 4–5) (Page ID #245–46); *see also id.* at 29 (Hr'g at 28) (Page ID #35). Miller can see whether there are outstanding jobs and can update the logs when he has completed an assignment.

Though Saginaw is 111 miles north of Melvindale, some of the unit mechanics have traveled to Saginaw for work. During one three-month period, when Miller was laid off, unit mechanics were sent to Saginaw to respond to service calls. *Id.* at 241 (Decision and Direction of Election at 6) (Page ID #247); *see also id.* at 71–72, 82 (Hr'g at 70–71, 81) (Page ID #77–78, 88). More recently, Miller has had jobs that have required more than one mechanic, and the unit mechanics have driven up to Saginaw to assist him. *Id.* at 241 (Decision and Direction of Election at 6) (Page ID #247); *see also id.* at 68–69 (Hr'g at 67–68) (Page ID #74–75).

**B. Procedure**

The Union filed an election petition with the NLRB, seeking to add Miller to the collective-bargaining unit of mechanics and truck drivers in Melvindale. *Id.* at 142 (Election Petition) (Page ID #148). Specifically, the Union sought an *Armour–Globe* election (named after *Armour & Co.*, 40 NLRB 1333 (1942), and *Globe Mach. & Stamping Co.*, 3 NLRB 294 (1937)), which permits an employee sharing a community of interest with an already-represented unit of employees to vote to join that unit. *See id.* at 236 (Decision and Direction of Election at

---

[2]Google Documents is an Internet-based application that allows users to upload, edit, store, and download any type of document. Users can also give other users access to documents.

1) (Page ID #242). In response to the petition, the NLRB's Regional Director conducted a hearing and then issued an opinion. *Id.*

The opinion compared Klochko's Melvindale location to its Saginaw location, focusing on how each office functions. *Id.* at 238 (Decision and Direction of Election at 3) (Page ID #244). The opinion also compared the six unit mechanics' responsibilities to Miller's responsibilities. *Id.* at 239–40 (Decision and Direction of Election at 4–5) (Page ID #245–46). After examining working conditions and considering whether there is sufficient contact among the employees, the opinion concluded that there is a community of interest between Miller and the Melvindale unit mechanics. *Id.* at 240–42 (Decision and Direction of Election at 5–7) (Page ID #246–48). Though the opinion acknowledged there are differences between the unit mechanics and Miller, it did not find these differences significant enough to prevent Miller from voting to join the unit. *Id.* at 242–43 (Decision and Direction of Election at 7–8) (Page ID #248–49). Finally, the opinion noted that "if the petition for the self-determination election to add the Saginaw mechanic to the existing unit is found not to be appropriate, then Miller would be denied the opportunity to be represented in collective bargaining because there are no other employees at the Saginaw facility which would constitute an appropriate separate unit"—an outcome that the opinion noted the NLRB disfavored. *Id.* at 243 (Decision and Direction of Election at 8) (Page ID #249).

Klochko requested that an NLRB panel review the Regional Director's decision, arguing that Miller did not share a community of interest with the unit mechanics. *Id.* at 247 (Request for Review) (Page ID #253). The NLRB panel denied Klochko's request because it "rais[ed] no

substantial issues warranting review." Joint Appendix Vol. II ("J.A. Vol. II") at 260 (Denial of Request for Review) (Page ID #270). The *Armour–Globe* election proceeded, and Miller voted to join the collective-bargaining unit in Melvindale. Klochko filed objections, alleging that the Union had improperly influenced the election. *Id.* at 262 (Objs.) (Page ID #272). The NLRB overruled the objections and certified the Union as Miller's collective-bargaining representative. *Id.* at 346 (Decision and Certification of Representative) (Page ID #356).

Following certification, the Union asked Klochko to recognize and bargain with it, specifically with respect to Miller. Miller was the only mechanic who did not have health insurance or retirement benefits. J.A. Vol. I. at 241 (Decision and Direction of Election at 6) (Page ID #247); *see also id.* at 128 (Hr'g at 127) (Page ID #134). Klochko refused. *See* J.A. Vol. II. at 366 (Answer to Am. Compl. at 4) (Page ID #376). Based on a charge filed by the Union, the NLRB's General Counsel issued a complaint alleging that Klochko's refusal violated 29 U.S.C. § 158(a)(1) and (5). *Id.* at 349 (Charge Against Employer) (Page ID #359); *id.* at 350 (Compl.) (Page ID #360); *id.* at 359 (Am. Compl.) (Page ID #369). Klochko maintained that the NLRB's certification of the Union as Miller's collective-bargaining representative was improper. *Id.* at 366 (Answer to Am. Compl. at 4) (Page ID #376). The NLRB's General Counsel filed a motion for summary judgment and Klochko responded. *Id.* at 369 (Decision and Order at 1) (Page ID #379). The NLRB granted the motion. *Id.* Klochko now appeals.

## II. ANALYSIS

The National Labor Relations Act ("NLRA") vests the NLRB with the authority to determine "the unit appropriate for the purposes of collective bargaining." 29 U.S.C. § 159(b).

8

Because Congress recognized "the need for flexibility in shaping the bargaining unit to the particular case," the NLRA gives the NLRB broad discretion in making these determinations. *NLRB v. Action Auto., Inc.*, 469 U.S. 490, 494 (1985) (alteration omitted) (quoting *NLRB v. Hearst Publ'ns, Inc.*, 322 U.S. 111, 134 (1944)). Indeed, the NLRA requires only that the NLRB select *an* appropriate bargaining unit, not the most appropriate bargaining unit. 29 U.S.C. § 159(b); *American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 610 (1991).

The NLRB "does not exercise this authority aimlessly." *Action Auto.*, 469 U.S. at 494. Rather, "in defining bargaining units, its focus is on whether the employees share a community of interest." *Id.* (internal quotation marks omitted). The community-of-interest test examines the following five factors: "(1) similarity in skills, interests, duties and working conditions; (2) functional integration of the plant, including interchange and contact among the employees; (3) the employer's organization and supervisory structure; (4) the bargaining history; and (5) the extent of union organization among the employees." *Kindred Nursing Ctrs. E.*, 727 F.3d at 560 (quoting *ADT Sec. Servs.*, 689 F.3d at 633–34). This ensures that "groups of employees in the same bargaining unit share a community of interests sufficient to justify their mutual inclusion in a single bargaining unit." *Id.* (quoting *ADT Sec. Servs.*, 689 F.3d at 633).

The scope of our review of the NLRB's unit determination is "exceedingly narrow." *Multi-Flow Dispensers of Toledo, Inc. v. NLRB*, 340 F. App'x 275, 280 (6th Cir. 2009) (quoting *NLRB v. Am. Seaway Foods, Inc.*, 702 F.2d 630, 632 (6th Cir. 1983)). We will uphold the NLRB's bargaining-unit determination "unless the employer establishes that it is arbitrary, unreasonable, or an abuse of discretion." *Kindred Nursing Ctrs. E.*, 727 F.3d at 558 (quoting

*Mitchellace, Inc. v. NLRB*, 90 F.3d 1150, 1157 (6th Cir. 1996)). "Any factual findings made by the Board in the course of a unit determination, if supported by substantial evidence, are conclusive." *Bry-Fern Care Ctr., Inc. v. NLRB*, 21 F.3d 706, 709 (6th Cir. 1994); *see also Multi-Flow Dispensers of Toledo*, 340 F. App'x at 280. Because the NLRB has significant discretion in determining an appropriate bargaining unit, and because this decision is closely tied to the unique facts of a case, the NLRB's orders defining bargaining units are "rarely to be disturbed." *Action Auto.*, 469 U.S. at 496 (quoting *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491 (1947)); *see also Kindred Nursing Ctrs. E.*, 727 F.3d at 559 ("We have even gone so far as to say that '[n]ormally the Board exercises a discretion bordering on finality in determining the unit appropriate for bargaining.'" (alterations in original) (quoting *Uyeda v. Brooks*, 365 F.2d 326, 330 (6th Cir. 1966))).

Klochko advances a number of arguments as to why the NLRB's decision is arbitrary, unreasonable, or otherwise an abuse of discretion. None of these arguments is persuasive. First, Klochko contends that there is no substantial evidence of "employee interchange." Resp't Br. at 22. In support of this argument, Klochko states that "Miller was only in Melvindale for two days" before starting working in Saginaw and that "Saginaw is 111 miles from Melvindale." *Id.* Though Klochko is correct that Miller was in Melvindale for only two days, the Melvindale mechanics have traveled to Saginaw on more than one occasion. Before Miller was hired, the unit mechanics were dispatched to the Saginaw area to perform repairs. J.A. Vol. I. at 241 (Decision and Direction of Election at 6) (Page ID #247). When Miller was laid off, they did the same. *Id.* More recently, when Miller has had repair jobs that have required more than one

mechanic, the unit mechanics have traveled to Saginaw to help him. *Id.* This is substantial evidence of employee interchange. And although geographic proximity is relevant, "[it] is not dispositive." *Bry-Fern Care Ctr.*, 21 F.3d at 710. The NLRB did not abuse its discretion by acknowledging the distance between Melvindale and Saginaw but concluding that, in light of other factors—including employee interchange—the 111 miles were not enough to preclude a finding of a community of interest. *See* J.A. Vol. I. at 240–41 (Decision and Direction of Election at 5–6) (Page ID #246–47).

Next, Klochko argues that the unit mechanics and Miller are not subject to similar working conditions. Resp't Br. at 23. There is substantial evidence to the contrary. Although the Melvindale facility is larger than the Saginaw facility, and although it can handle more complex repairs, the working conditions for the mechanics in the two facilities are similar. All mechanics—including Miller—work from 7:30 A.M. to 4:00 P.M. J.A. Vol. I. at 241 (Decision and Direction of Election at 6) (Page ID #247). And all mechanics—again including Miller—are paid on an hourly basis. *Id.* The unit mechanics earn between $16.31 and $24.54.[3] *Id.* Miller earns $18.08, well within the unit mechanics' pay scale. *Id.* The unit mechanics are responsible for a range of work, from preventative maintenance to complex repairs. *Id.* at 238 (Decision and Direction of Election at 3) (Page ID #244). Miller is also responsible for a range of work, also

---

[3]Klochko, referencing a page from the hearing transcript, claims that "the Melvindale mechanics" earn $32.88 an hour. Resp't Br. at 14 n.8. The cited-to page does not support this proposition. *See* J.A. Vol. I. at 44 (Hr'g at 43) (Page ID #50). The $32.88 figure appears to be from the collective-bargaining agreement, and represents field mechanics' base wage *plus* retirement-related contributions and other benefits, not the base wage that Klochko pays the unit mechanics—which is what the $16.31 and $24.54 figures refer to. *See id.* at 183–85 (Union Agreement at 34–36) (Page ID #189–91).

from preventative maintenance to complex repairs. *Id.* at 42 (Hr'g at 41) (Page ID #48). Though Miller does earn less than field mechanics, or than class-A mechanics, *id.* at 241 (Decision and Direction of Election at 6) (Page ID #247), this is likely either because he also is responsible for preventative maintenance or because he does not have the benefit of collective bargaining. All of the mechanics also report to Snyder. *Id.* at 238 (Decision and Direction of Election at 3) (Page ID #244).

Miller does have responsibilities that the unit mechanics do not. When Daugharty is out of the office, Miller must respond to customer requests to rent or buy equipment. *Id.* at 240 (Decision and Direction of Election at 5) (Page ID #246). And when Snyder cannot reach him by phone, Miller has to monitor the "request log" and the "service call log" on Google Docs. *Id.* at 239 (Decision and Direction of Election at 4) (Page ID #245); *see also id.* at 29 (Hr'g at 28) (Page ID #35). But Miller has filled in for Daugharty only once, and as the Regional Director's opinion noted, it took "about one-half hour." *Id.* at 240 (Decision and Direction of Election at 5) (Page ID #246). Miller's reliance on Google Docs, though certainly different from the unit mechanics' experience (who use desktop computers only to log their time), *see id.* at 239 (Decision and Direction of Election at 4) (Page ID #245), is not so significant that it outweighs other evidence of similar working conditions. The NRLB did not abuse its discretion by concluding that all of Klochko's mechanics are subject to similar working conditions.

Finally, Klochko argues that the unit mechanics and Miller have different benefits. Resp't Br. at 25. Although they have many of the same basic benefits (such as sick time, vacation time, and paid days off), Klochko is correct that, unlike Miller, the unit mechanics have

health insurance as well as retirement benefits. J.A. Vol. I. at 241 (Decision and Direction of Election at 6) (Page ID #247). These differences, however, are the result of the collective-bargaining agreement. *Id.* To deny Miller's request to join the collective-bargaining unit based on differences that exist *because* Miller is not covered by the collective-bargaining agreement would defeat the purpose of the NLRA. The NLRB did not abuse its discretion by rejecting similar arguments. *See id.*

## III. CONCLUSION

Because it is not arbitrary, unreasonable, or an abuse of discretion, we **ENFORCE** the NLRB's final decision.