RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0040p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

AMERICAN MUNICIPAL POWER, INC.,
            *Petitioner/Cross-Respondent*,

            *v.*

NATIONAL LABOR RELATIONS BOARD,
            *Respondent/Cross-Petitioner*.

Nos. 18-1958/1995

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board;
No. 10-CA-221403.

Decided and Filed:  March 11, 2019

Before:  SUTTON, WHITE, and DONALD, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:**  Kerry P. Hastings, Conor H. Meeks, TAFT STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio for Petitioner/Cross-Respondent.  Linda Dreeben, Julie B. Broido, Milakshmi V. Rajapakse, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent/Cross-Petitioner.

───────────────

## OPINION

───────────────

SUTTON, Circuit Judge.  When American Municipal Power opened a power plant in Smithland, Kentucky, the International Brotherhood of Electrical Workers petitioned to represent the plant's operators.  The National Labor Relations Board certified a bargaining unit consisting of the full-time and regular part-time operators employed at the newly opened facility.  Because

the company worries that this definition includes operators based at other locations that it temporarily assigns to Smithland, it asked the Board to modify the bargaining unit's language to exclude temporary assignees. The Board disagreed. It saw no need to make the clarification under the circumstances. We deny the company's petition and enforce the Board's order to negotiate.

At American Municipal Power's hydroelectric plants, operators run the generating units, coordinate the flow of water, and conduct maintenance. As the Smithland plant came online in 2017, the company sent four operators from its Cannelton Dam facility in Hawesville, Kentucky to the Smithland facility. The temporarily assigned operators worked a handful of days, mostly training the new plant's employees. A fifth Cannelton operator—Joe Frakes—worked at the Smithland plant five days a week from June to October 2017, and one day a week thereafter until mid-January 2018. Frakes spent about half the time as an operator and half the time assisting with administrative work.

In late January 2018, the union filed a petition to represent operators working at Smithland. After a hearing, the Board's regional director certified this collective bargaining unit: "All full-time and regular part-time Operator I and Operator II employees employed by American Municipal Power, Inc. at its facility located at 1297 Smithland Dam Road . . . , excluding office clerical employees, professional employees, confidential employees, guards, and supervisors as defined in the [National Labor Relations] Act." J.A. at 125.

American Municipal Power objected, claiming the definition improperly includes operators that the company assigns to Smithland on a temporary basis. The company asked the director to exclude temporary assignees by name by limiting the unit to "employees primarily assigned to the Smithland facility." *Id.* The union agreed that the bargaining unit shouldn't include temporarily assigned workers but thought the definition already accomplished this goal. The additional language, the union worried, might have unintended consequences in future negotiations.

The Board's regional director agreed with the union. He found that the company "has no scheduled plans for any employees from other facilities to perform temporary work" at

Smithland. J.A. at 127. At best, the director noted, the company "could conceive" of a few instances when it might send a temporary worker to Smithland, such as to deal with "a severe staffing" shortage. *Id.* The director concluded that his definition constituted an "appropriate and unambiguous unit" and that he need not determine the status of all temporary workers at that point because the company lacked plans to assign any operators to Smithland temporarily. J.A. at 125.

The Board denied American Municipal Power's request for review.

The eight Smithland operators voted to join the union. To test the validity of the bargaining unit definition, American Municipal Power refused to bargain, and the Board ordered it to do so. The company petitions us to review the bargaining unit, and the Board asks us to enforce its order.

The National Labor Relations Act requires the Board to determine "the unit appropriate for the purposes of collective bargaining." 29 U.S.C. § 159(b). When a union asks to represent a group of employees, the Board determines whether workers in the petitioned-for unit possess a "community of interest," which turns on the organization's management structure as well as on whether employees possess similar skills, interests, duties, and working conditions. *Kindred Nursing Ctrs. E., LLC v. NLRB*, 727 F.3d 552, 560 (6th Cir. 2013) (quotation omitted).

Because this process involves "informed discretion," the Board's judgment receives deference. *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491 (1947). We may overturn the Board's overall determination only if its decision was arbitrary or constituted an abuse of discretion. *See NLRB v. ADT Sec. Servs., Inc.*, 689 F.3d 628, 634 (6th Cir. 2012).

The parties agree that temporary operators do not share a community of interest with full-time and regular part-time Smithland operators. They disagree over whether the unit definition properly excludes operators assigned to Smithland for brief stints and whether the Board needed to resolve more clearly the status of future temporary workers.

The Board permissibly chose not to say any more in its order. To start, the definition of the bargaining unit by its terms doesn't include temporary assignees, making any amendment or

modification unnecessary.   The unit contains only those "full-time and regular part-time [operators] employed . . . at" Smithland.  J.A. at 125.  Those words say a lot.  A future temporary assignee who covers for a staff shortage is not employed at Smithland.  The operator instead is employed at his home location even if he pinch-hits elsewhere.  Given the definition's clarity, we can understand the Board's desire not to say more.

The definition gets clearer when cast in the light of the Board's prior practice.  Consider *Marian Medical Center*, 339 N.L.R.B. 127 (2003).  It addressed the status of a maintenance worker "permanently and regularly employed" at one facility but temporarily assigned to another facility.  *Id.* at 129.  Because the employer transferred the maintenance worker "for a finite, ascertainable term," the Board concluded that he didn't share enough in common with the employees at the temporary location to vote in its bargaining unit.  *Id.*  So it is likely here.

More persuasively still, the regional director found that American Municipal Power lacked plans to assign other operators to Smithland on a temporary basis.  Rulings premised on contingent events create contingent law.  The director reasonably decided to avoid drawing lines based on unseen future events.  Should confusion arise in the future, the Board notes, the union and American Municipal Power could negotiate to expand the bargaining unit or take advantage of the Board's unit clarification process. *Cf. Union Elec. Co.*, 217 N.L.R.B. 666, 667 (1975).

Trying to head off this conclusion, the company takes issue with the Board's reading of the unit definition.   "Employed," the company says, simply means working for American Municipal Power.  So:  an operator "employed at Smithland" means an operator working there, either temporarily or permanently.  But in common parlance, the phrase "employed at" a specific location generally means permanent or consistent occupation in the place, not temporary assignment.  If an Ohio company sent an employee on a trip to visit its Kentucky store for one day, no one would say that the employee was employed at the Kentucky store.  Just so here.

The company adds that, because the Board didn't fully articulate the meaning of "employed at" in the agency proceeding, the court should remand the matter to amend the director's opinion.  But there is no need for that.  The Board announced its interpretation in our court and cannot backtrack now.   Plus, the director chose the phrase "employed . . . at

Smithland" to replace the union's proposed phrase "performing work at . . . Smithland." J.A. at 124, 125. While he may have implied only the reading that the Board now makes explicit, the director nonetheless made an intentional and meaningful choice.

The company makes hay over the regional director's observation that he could leave temporary operators' "status unanswered for now" so that the parties could bargain later. J.A. at 125. This, it says, means that the Board has taken inconsistent positions, initially refusing to determine whether temporary operators fall within the Smithland unit but now arguing those operators aren't included. The Board in other words can't have it both ways. If it wants the decision affirmed on the ground that it's too early to decide, it can't preemptively decide any question about temporary workers. That's a fair point. But the Board (and we) also need to ensure that a bargaining unit includes only workers with a community of interest. That's why the Board clarified the director's remark and cited case law showing that it always excludes from elections workers assigned to a temporary location for a finite duration. With this clarification in mind, the Board simply didn't prejudge the status of *other* workers—such as a non-Smithland operator working regularly at Smithland—who might have fallen within the company's proposed exclusion.

The company invokes two precedents of the Board in which it excluded certain seasonal or intermittent workers from bargaining units. *See Ind. Bottled Gas Co.*, 128 N.L.R.B. 1441, 1442 n.4 (1960); *F.W. Woolworth Co.*, 119 N.L.R.B. 480, 484 (1957). But the companies in those cases had a longstanding history of hiring those temporary employees and the Board decided to clarify their status. By contrast, the regional director weighed the evidence and reasonably concluded that American Municipal Power assigned a handful of non-Smithland employees to jumpstart the Smithland facility and lacked a "current plan or schedule" to send more in the future. J.A. at 126. That was a reasonable choice.

The company claims that the Board's decision is arbitrary because, had the union filed its petition just a few days before, Joe Frakes would have been working at Smithland and the Board would have needed to determine his eligibility to vote. But there's nothing arbitrary about deciding questions about facts that exist and declining to conjecture about facts that don't exist.

Lastly, the company complains that it cannot compel the union to negotiate over modifications to the bargaining unit. *See Taylor Warehouse Corp. v. NLRB*, 98 F.3d 892, 902 (6th Cir. 1996). But if a new situation arises that demands resolution and the union refuses to cooperate, the company can invoke the unit clarification process. *See Union Elec. Co.*, 217 N.L.R.B. at 667. For now, the company knows what it needs to know: An otherwise-permanent operator temporarily sent to Smithland doesn't fall within the Smithland bargaining unit.

We deny American Municipal Power's petition and grant the Board's cross-application for enforcement.